E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RANEE A. KATZENSTEIN (Cal. Bar No. 187111)
Assistant United States Attorney
Chief, Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2432
     Facsimile: (213) 894-6269
     E-mail:    poonam.kumar@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>ZE'SHAWN STANLEY CAMPBELL,<br><br>          Defendant. | No. CR 21-99-MCS<br><br>PLEA AGREEMENT FOR DEFENDANT<br>ZE'SHAWN STANLEY CAMPBELL |

     1.   This constitutes the plea agreement between Ze'Shawn
Stanley Campbell ("defendant") and the United States Attorney's
Office for the Central District of California (the "USAO") in the
above-captioned case.  This agreement is limited to the USAO and
cannot bind any other federal, state, local, or foreign prosecuting,
enforcement, administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

          a.   At the earliest opportunity requested by the USAO and
provided by the Court, appear and plead guilty to counts three and
six of the indictment in <u>United States v. Campbell</u>, CR No. 21-99-MCS,

which charge defendant with wire fraud, in violation of 18 U.S.C. § 1343, and engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957.

   b. Not contest facts agreed to in this agreement.

   c. Abide by all agreements regarding sentencing contained in this agreement.

   d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

   e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

   f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

   g. Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

   h. Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

   i. Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at

1   usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

2   Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

3   Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

4   criminal debt shall be assessed based on the completed Financial

5   Disclosure Statement and all required supporting documents, as well

6   as other relevant information relating to ability to pay.

7           j.   Authorize the USAO to obtain a credit report upon

8   returning a signed copy of this plea agreement.

9           k.   Consent to the USAO inspecting and copying all of

10  defendant's financial documents and financial information held by the

11  United States Probation and Pretrial Services Office.

12                        THE USAO'S OBLIGATIONS

13      3.   The USAO agrees to:

14           a.   Not contest facts agreed to in this agreement.

15           b.   Abide by all agreements regarding sentencing contained

16  in this agreement.

17           c.   At the time of sentencing, move to dismiss the

18  remaining counts of the indictment as against defendant.  Defendant

19  agrees, however, that at the time of sentencing the Court may

20  consider any dismissed charges in determining the applicable

21  Sentencing Guidelines range, the propriety and extent of any

22  departure from that range, and the sentence to be imposed.

23           d.   At the time of sentencing, provided that defendant

24  demonstrates an acceptance of responsibility for the offenses up to

25  and including the time of sentencing, recommend a two-level reduction

26  in the applicable Sentencing Guidelines offense level, pursuant to

27  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

28  additional one-level reduction if available under that section.

<u>NATURE OF THE OFFENSES</u>

4.   Defendant understands that for defendant to be guilty of the crime charged in count three, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, the following must be true:

a.   Defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

b.   The statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

c.   The defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

d.   The defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

5.   Defendant understands that for defendant to be guilty of the crime charged in count six, in violation of Title 18, United States Code, Section 1957, the following must be true:

a.   The defendant knowingly engaged or attempted to engage in a monetary transaction;

b.   The defendant knew the transaction involved criminally derived property;

c.   The property had a value greater than $10,000;

d.   The property was, in fact, derived from wire fraud, as charged in counts one through five of the indictment; and

e.   The transaction occurred in the United States.

The term "monetary transaction" includes the withdrawal, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution. The term "financial institution" includes Wells Fargo Bank, a bank the deposits of which are federally insured by the Federal Deposit Insurance Corporation. The term "criminally derived property" means any property constituting, or derived from, the proceeds obtained from a criminal offense. The government must prove that the defendant knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense. The government does not have to prove that the defendant knew the precise nature of that criminal offense, or knew the property involved in the transaction represented the proceeds of wire fraud. Although the government must prove that, of the property at issue, more than $10,000 was criminally derived, the government does not have to prove that all the property at issue was criminally derived.

<u>PENALTIES AND RESTITUTION</u>

6. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is: 20 years of imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1957, is: 10 years of imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or

gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.    Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 30 years of imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and mandatory special assessments of $200.

9.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

10.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated

6

collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

11.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.   Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.   Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.   Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

12.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.   Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 14 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

<u>Wire Fraud Scheme and Unlawful Monetary Transaction</u>

Between no later than April 2014 and continuing through at least in or around April 2020, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud (collectively, "victims") as to material matters, and to obtain moneys, funds, assets, and other property owned by and in the custody and control of victims by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

In order to convince his victims that he was creditworthy and reliable, defendant would befriend and start romantic relationships with his victims and falsely tell them that he had millions of dollars, operated several successful businesses, including a chain of gyms in Texas, McDonald's franchises, and a security business, that he had had success as a real estate investor and by investing in Bitcoin, and that he had served in the Iraq and Afghanistan wars as a NAVY Seal.  Once he had so convinced them, defendant induced his victims to provide money and property to him, including in the form of purported loans and investments, by making the following material false statements, representations, and promises, including, but not limited to: (1) that he would repay the money he borrowed from victims in a short, specified period of time; (2) that he had the means to repay victims loaning him money; (3) that he would use certain money provided by certain victims to (a) invest in a real estate venture that was to renovate and then sell properties at a profit, (b) to pay his purported medical bills; (c) to invest in Bitcoin; (d) to increase his ownership stake in and make renovations

8

to a chain of gyms in Texas; (e) to purchase McDonald's restaurants; (f) to pay the salaries of his security business; (4) that he would pay any charges incurred by the victims on apartment lease agreements, car leases, and credit cards defendant opened in the victims' names.  Rather than use the funds as he promised, defendant used the funds to buy luxury items for himself, pay personal debts, and for other personal expenses.

In execution of the wire fraud scheme, defendant caused Victim No. 3, J.Q., to provide a check for $61,452, which defendant deposited on December 22, 2017, via interstate wires into an account in Los Angeles, California, that defendant maintained and solely controlled in the name of INDVLS at Wells Fargo Bank, a federally insured financial institution.  J.Q. had provided the money to defendant based on his representations and promises that he would invest the money in Bitcoin on J.Q.'s behalf.  In fact, and contrary to the representations and promises he had made, defendant used the funds to support his lifestyle, including by making payments on a BMW and Mercedes-Benz that he had leased in the name of Victim 7, M.G. As part of his use of the funds he had obtained from J.Q. for personal expenses instead of for the investments on J.Q.'s behalf that he had promised to make, on or about December 27, 2017, defendant withdrew approximately $20,000 in cash from the INDVLS account, of which at least $10,001 was proceeds of the wire fraud scheme charged in counts one through five of the indictment.

Bank Fraud Scheme

In connection with his wire fraud scheme, between April 2014 and January 2018, defendant also knowingly and with the intent to defraud executed a scheme to obtain money, funds, credits, assets, and other

9

property owned by and under the custody and control of financial institutions ("victim financial institutions") by means of false and fraudulent pretenses, representations, and promises, and the concealment of material facts.  Specifically, defendant would obtain the names, dates of birth, social security numbers, and the personal identifying information of real people.  Defendant would then use this personal identifying information of real people ("victim accountholders") to obtain loans and credit cards from the victim financial institutions.  In so doing, defendant falsely represented that the victim accountholders had applied for the loans and credit cards when they had not.  Further, defendant would falsely represent that the victim accountholders had agreed to repay the loans or pay for the charges incurred made to the fraudulent credit card accounts when they had not.

Total Losses

As a result of defendant's scheme, defendant caused at least $250,000 and no more than $1,500,000 in losses to 19 different victims, including M.G., M.B., J.B., M.C. J.Q., K.H., M.H., N.M., N.H., J.L., Bank of America, Citibank, Discover, Chase, Wells Fargo, BMW Financial Services, Mercedes Benz, USAA, and Porsche.

SENTENCING FACTORS

13.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

14.   Defendant and the USAO agree that the offenses group under U.S.S.G. § 3D1.2 and that the following Sentencing Guidelines factors apply:

| | | |
|---|---|---|
| Base Offense Level for underlying offense | 7 | [U.S.S.G. §§ 2S1.1(a)(1); 2B1.1(a)(1)] |
| Specific Offense Characteristics for underlying offense: | | |
| Loss of More than $250,000 and Less than $1,500,000 | +12 or +14 | [U.S.S.G. § 2B1.1(b)(1)(G),(H)] |
| 10 or More Victims | +2 | [U.S.S.G. § 2B1.1(b)(2)(A)] |
| Unauthorized use of means of ID to obtain another means of ID | +2 | [U.S.S.G. § 2B1.1(b)(11)(C)(i)] |
| Conviction under 18 U.S.C. § 1957 | +1 | U.S.S.G. § 2S1.1(b)(2)(A) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

15.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

16.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

1

## WAIVER OF CONSTITUTIONAL RIGHTS

2   17.   Defendant understands that by pleading guilty, defendant

3   gives up the following rights:

4          a.   The right to persist in a plea of not guilty.

5          b.   The right to a speedy and public trial by jury.

6          c.   The right to be represented by counsel -- and if

7   necessary, have the Court appoint counsel -- at trial.  Defendant

8   understands, however, that, defendant retains the right to be

9   represented by counsel -- and if necessary, have the Court appoint

10  counsel -- at every other stage of the proceeding.

11         d.   The right to be presumed innocent and to have the

12  burden of proof placed on the government to prove defendant guilty

13  beyond a reasonable doubt.

14         e.   The right to confront and cross-examine witnesses

15  against defendant.

16         f.   The right to testify and to present evidence in

17  opposition to the charges, including the right to compel the

18  attendance of witnesses to testify.

19         g.   The right not to be compelled to testify, and, if

20  defendant chose not to testify or present evidence, to have that

21  choice not be used against defendant.

22         h.   Any and all rights to pursue any affirmative defenses,

23  Fourth Amendment or Fifth Amendment claims, and other pretrial

24  motions that have been filed or could be filed.

25

## WAIVER OF APPEAL OF CONVICTION

26  18.   Defendant understands that, with the exception of an appeal

27  based on a claim that defendant's guilty pleas were involuntary, by

28  pleading guilty defendant is waiving and giving up any right to

appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

19.  Defendant agrees that, provided the Court imposes a total term of imprisonment within or below the range corresponding to an offense level of 26 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $1.5 million; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20.  The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b)  the Court imposes a term

13

of imprisonment within or above the range corresponding to an offense level of 23 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: (a) the amount of restitution ordered if that amount is less than $1.5 million.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

21. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

22. Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the

1  entire plea agreement and vacate defendant's guilty pleas on any
2  remaining counts of conviction, with both the USAO and defendant
3  being released from all their obligations under this agreement, or
4  (c) leave defendant's remaining convictions, sentence, and plea
5  agreement intact.  Defendant agrees that the choice among these three
6  options rests in the exclusive discretion of the USAO.

7                    EFFECTIVE DATE OF AGREEMENT

8       23.  This agreement is effective upon signature and execution of
9  all required certifications by defendant, defendant's counsel, and an
10 Assistant United States Attorney.

11                     BREACH OF AGREEMENT

12      24.  Defendant agrees that if defendant, at any time after the
13 effective date of this agreement, knowingly violates or fails to
14 perform any of defendant's obligations under this agreement ("a
15 breach"), the USAO may declare this agreement breached.  All of
16 defendant's obligations are material, a single breach of this
17 agreement is sufficient for the USAO to declare a breach, and
18 defendant shall not be deemed to have cured a breach without the
19 express agreement of the USAO in writing.  If the USAO declares this
20 agreement breached, and the Court finds such a breach to have
21 occurred, then: (a) if defendant has previously entered guilty pleas
22 pursuant to this agreement, defendant will not be able to withdraw
23 the guilty pleas, and (b) the USAO will be relieved of all its
24 obligations under this agreement.

25      25.  Following the Court's finding of a knowing breach of this
26 agreement by defendant, should the USAO choose to pursue any charge
27 that was either dismissed or not filed as a result of this agreement,
28 then:

                              15

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

26.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

16

to the United States Probation and Pretrial Services Office and the
Court, (b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 14 are
consistent with the facts of this case.  While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

28.  Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to the
maximum established by statute, defendant cannot, for that reason,
withdraw defendant's guilty pleas, and defendant will remain bound to
fulfill all defendant's obligations under this agreement.  Defendant
understands that no one -- not the prosecutor, defendant's attorney,
or the Court -- can make a binding prediction or promise regarding
the sentence defendant will receive, except that it will be between
the statutory mandatory minimum and the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

29.  Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the USAO
and defendant or defendant's attorney, and that no additional

17

1 | promise, understanding, or agreement may be entered into unless in a

2 | writing signed by all parties or on the record in court.

3 | <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

4 |     30.  The parties agree that this agreement will be considered

5 | part of the record of defendant's guilty plea hearing as if the

6 | entire agreement had been read into the record of the proceeding.

7 | AGREED AND ACCEPTED

8 | UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
9 | CALIFORNIA

10 | E. MARTIN ESTRADA
United States Attorney

11 |

12 | _____     _____

13 | RANEE A. KATZENSTEIN              Date
Assistant United States Attorney

14 | _____     _____

15 | ZE'SHAWN STANLEY CAMPBELL        Date
Defendant

16 | _____     _____

17 | PAT HARRIS                      Date
Attorney for Defendant ZE'SHAWN
18 | STANLEY CAMPBELL

19 | ///

20 | ///

21 | ///

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2      30.   The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 STEPHANIE S. CHRISTENSEN
Acting United States Attorney

9

10 _____        October 6, 2022
RANEE A. KATZENSTEIN                      _____
11 Assistant United States Attorney        Date

12 _____        10-4-22
ZE'SHAWN STANLEY CAMPBELL                 _____
13 Defendant                               Date

14 _____        10-4-22
PAT HARRIS                                _____
15 Attorney for Defendant ZE'SHAWN         Date
STANLEY CAMPBELL

16

17 ///

18 ///

19 ///

20

21

22

23

24

25

26

27

28

19

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          ___10-4-22_____
ZE'SHAWN STANLEY CAMPBELL                  Date
Defendant

///

///

///

20

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Ze'Shawn Stanley Campbell's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

PAT HARRIS
Attorney for Defendant ZE'SHAWN
STANLEY CAMPBELL

10·4·22
Date

21