# EXHIBIT 1

████████████████████

- 1 of 3 -

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry      12/12/2019

M████ G█████(G █████ was interviewed at the Los Angeles Field Office of the Federal Bureau of Investigation located at 11000 Wilshire Boulevard, Los Angeles, California 90024.  After being advised of the identity of the interviewing agent and the nature of the interview, G█████ provided the following information:

G█████ said the wire she sent on September 18, 2019 for $40,000 from her JP Morgan Chase bank account was part of the loan to help ZESHAWN CAMPBELL(CAMPBELL) retain his McDonald's franchises.

When G█████ withdrew cash in the summer of 2017 to give to CAMPBELL to help him make payroll for his security business she sometimes handed CAMPBELL the cash instead of depositing into it his account. She did not know how often that occurred.

G█████ reviewed her JP Morgan Chase bank statements for accounts ending 4180 and 2161. She said the following cash withdrawals from her Chase accounts were given to CAMPBELL. She said the money was to help CAMPBELL cover the payroll for his security contracting business.

From G█████'s Chase account ending in 4180

6/23/2017 $2,500

7/5/2017 $7,000

7/7/2017 $6,800

7/10/2017 $5,000

7/13/2017 $5,000

7/25/2017 $3,000

---

Investigation on  12/05/2019  at  Los Angeles, California, United States (In Person)

File # ████████████        Date drafted  12/11/2019

by  HEATON RYAN

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 5-8-10)

████████████████████

███████████

Continuation of FD-302 of (U) Mi▓▓ Ge▓▓▓ 12/5/2019 _____ , On 12/05/2019 , Page 2 of 3

From GE▓▓▓▓ Chase account ending in 2161

7/25/2017 $3,000

7/28/2017 $20,000

    GE▓▓ then reviewed her Chase bank statements for the month of January 2018 for accounts ending in 4180 and 2161. GE▓▓▓'s mother lent her the money at the time. G▓▓▓▓ withdrew of that money as cash and gave it to CAMPBELL. GE▓▓▓ said she gave the following cash withdrawals to CAMPBELL:

From account 2161

1/24/2018 $45,000

1/25/2018 $9,900

1/25/2018 $9,900

1/25/2018 $13,000

1/29/2018 $2,000

1/30/2018 $9,999

1/30/2018 $40,000

    GE▓▓▓▓ gave CAMPBELL this money because he called and told her he had borrowed money from bad people who had threatened himself and his family. GE▓▓▓ did not send the money via wire as she had done previously because CAMPBELL told her his Wells Fargo Bank account was shut down. GE▓▓▓▓ said CAMPBELL suggested that she withdraw the money in less than $10,000 increments so she did not have to worry about the IRS form being generated.

    GE▓▓▓▓ reviewed her Chase bank statement for accounts ending in 4180 and 2161 for the month of February 2018. GE▓▓▓▓ said the following cash withdrawals were given to CAMPBELL:

From account 4180

2/5/2018 $12,000

2/12/2018 $5,000

FD-**302a** (Rev. 5-8-10)

████████████████████

Continuation of FD-302 of ██████ (U) M███████ ████████ 12/5/2019 _____ , On  12/05/2019  , Page  3 of 3

From account 2161:

2/2/2018 $2,500

    This cash was given to CAMPBELL to help repay the people CAMPBELL borrowed money from that threatened him if he did not repay them.

    GB████ reviewed her Chase bank statements for accounts ending in 4180 and 2161 for the month of March 2018. GB████ said the following cash withdrawals were given to CAMPBELL:

From account 2161

3/1/2018 $25,000

3/2/2018 $20,000

3/5/2018 $7,000

3/5/2018 $10,000

3/6/2018 $21,500

    The $21,500 payment was given to CAMPBELL to help him buy out a business partner, TREVOR ROGERS(ROGERS), in the gym business. CAMPBELL had previously sent GE████ purchase agreements regarding the sale of the gyms. CAMPBELL said ROGERS had a gambling problem and needed money. GE████ relied on the documents regarding the purchase of the gyms; the documents looked legitimate. CAMPBELL told her if he acquired the gym company he would be able to repay GE████ all the money she had given him since they met. The remaining withdrawals were given to CAMPBELL to help him repay the loans he took from the people who threatened him if he did not repay them. GE████ sold her condominium to come up with the money she gave CAMPBELL in March 2018. GE████ worked out a lease back agreement with the buyer to continue to live in her unit.

**CHASE** ⬡

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

June 21, 2017 through July 21, 2017
Primary Account: 000000426544180

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-935-9935 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |

00026518 DRE 703 141 20317 YNYNNNNNNNN T 1 000000000 14 0000
MIRXXA A GEXXXND
3XXXWATXXMAXNE



## CONSOLIDATED BALANCE SUMMARY

**ASSETS**

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Premier Plus Checking | 000000426544180 | $2,503.80 | $1,723.56 |
| Chase Plus Savings | 000002936262161 | 24,626.78 | 4,322.41 |
| Total | | $27,130.58 | $6,045.97 |
| **TOTAL ASSETS** | | **$27,130.58** | **$6,045.97** |

All Summary Balances shown are as of July 21, 2017 unless otherwise stated.   For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements.  Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.

Page 1 of 6

**SB1067470-F1**

**2179**

USAO_00000383

## CHASE ◯

June 21, 2017 through July 21, 2017
Primary Account: 000000426544180

### CHASE PREMIER PLUS CHECKING

MIRIAM A GEDWED

Account Number: 000000426544180

### CHECKING SUMMARY

| | AMOUNT |
|---|---|
| Beginning Balance | $2,503.80 |
| Deposits and Additions | 21,514.52 |
| Checks Paid | -9,721.59 |
| ATM & Debit Card Withdrawals | -2,040.00 |
| Electronic Withdrawals | -5,212.17 |
| Other Withdrawals | -5,309.00 |
| Fees | -12.00 |
| Ending Balance | $1,723.56 |
| | |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.02 |
| Interest Paid Year-to-Date | $0.12 |

Your account ending in 2161 is linked to this account for overdraft protection.

### CHECKS PAID

| CHECK NUMBER | DATE PAID | AMOUNT |
|---|---|---|
| 1057  ^ | 06/27 | $100.00 |
| 1059 * ^ | 07/10 | 9,621.59 |
| **Total Checks Paid** | | **$9,721.59** |

If you see a check description in the Transaction Detail section, it means your check has already been converted for electronic payment. Because of this, we're not able to return the check to you or show you an image on Chase.com.
* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.
^ An image of this check may be available for you to view on Chase.com.

### TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $2,503.80 |
| 06/22 | 06/22 Online Payment 6314222238 To AT&T Mobility | -100.00 | 2,403.80 |
| 06/23 | Online Transfer From Mma ...2161 Transaction#: 6315107821 | 5,000.00 | 7,403.80 |
| 06/23 | 06/23 Online Payment 6315100625 To Chabad of Irvine | -119.00 | 7,284.80 |
| 06/23 | 06/23 Online Payment 6315108198 To Southern California Edison | -100.00 | 7,184.80 |
| 06/23 | 06/23 Online Payment 6315108670 To Southern California Gas | -35.00 | 7,149.80 |
| 06/23 | 06/23 Withdrawal | -5,000.00 | 2,149.80 |
| 06/26 | 06/25 Online Payment 6320209746 To AT&T U-Verse | -79.71 | 2,070.09 |
| 06/26 | 06/25 Online Payment 6320216637 To Citi Cards | -341.03 | 1,729.06 |
| 06/27 | Check          # 1057 | -100.00 | 1,629.06 |
| 06/28 | ATM Check Deposit       06/28 101 S Harbor Blvd Anaheim CA Card 4699 | 1,751.00 | 3,380.06 |

Page 2 of 6

USAO_00000384

CHASE ⬡

June 21, 2017 through July 21, 2017
Primary Account: 000000426544180



## TRANSACTION DETAIL *(continued)*

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| 06/28 | ATM Check Deposit        06/28 101 S Harbor Blvd Anaheim CA Card 4699 | 41.00 | 3,421.06 |
| 06/28 | ATM Withdrawal        06/28 101 S Harbor Blvd Anaheim CA Card 4699 | -40.00 | 3,381.06 |
| 07/03 | ATM Savings Transfer    07/03 2967 Michelson DR Ste A Irvine CA Card 4699 | 2,000.00 | 5,381.06 |
| 07/03 | 07/01 Online Payment 6338307931 To Chase Cardmember Services | -500.00 | 4,881.06 |
| 07/03 | 07/01 Online Payment 6338310170 To Citi Cards | -500.00 | 4,381.06 |
| 07/03 | 07/01 Online Payment 6338452411 To Bioreference Labs-Patient Pay | -127.02 | 4,254.04 |
| 07/03 | ATM Withdrawal        07/03 2967 Michelson DR Ste A Irvine CA Card 4699 | -2,000.00 | 2,254.04 |
| 07/05 | 07/05 Online Payment 6344322453 To Sarah Steinmeyer | -140.00 | 2,114.04 |
| 07/06 | ATM Check Deposit        07/06 101 S Harbor Blvd Anaheim CA Card 4699 | 391.00 | 2,505.04 |
| 07/06 | Chase Quickpay Electronic Transfer 6349625553 From Pamela P Esquilio | 41.00 | 2,546.04 |
| 07/06 | New American Fnd Nat Paymnt        PPD ID: 35058 | -1,181.95 | 1,364.09 |
| 07/06 | Pi*Associa 85912 Web Pmts  Zzhp9        Web ID: 9000307749 | -384.33 | 979.76 |
| 07/06 | Pi*Paylease    Web Pmts  4Qjp9        Web ID: 9000287225 | -2.95 | 976.81 |
| 07/07 | ATM Check Deposit        07/06 2967 Michelson DR Ste A Irvine CA Card 4699 | 1,250.00 | 2,226.81 |
| 07/10 | Online Transfer From Mma ...2161 Transaction#: 6356169957 | 6,000.00 | 8,226.81 |
| 07/10 | Online Transfer From Mma ...2161 Transaction#: 6356484365 | 4,000.00 | 12,226.81 |
| 07/10 | Deposited Item Returned    NSF 1St        099020198<br># of Items00001Ck#:0000000079            Dep<br>Amt0000039100    Dep Date070617Ck Amt0000030900<br>Svc Fee001200 | -309.00 | 11,917.81 |
| 07/10 | 07/08 Online Payment 6354529154 To Uppc | -35.67 | 11,882.14 |
| 07/10 | 07/10 Online Payment 6344323487 To American Express | -500.00 | 11,382.14 |
| 07/10 | Check        # 1059 | -9,621.59 | 1,760.55 |
| 07/10 | Deposit Item Returned Fee: 01 NSF 1St        099020198<br># of Items00001Ck#:0000000079            Dep<br>Amt0000039100    Dep Date070617Ck Amt0000001200<br>Svc Fee001200 | -12.00 | 1,748.55 |
| 07/12 | ATM Check Deposit        07/12 2967 Michelson DR Ste A Irvine CA Card 4699 | 282.50 | 2,041.05 |
| 07/12 | Deposit        776714213 | 41.00 | 2,082.05 |
| 07/14 | Chase Quickpay Electronic Transfer 6365768483 From Pamela P Esquilio | 25.00 | 2,107.05 |
| 07/18 | Deposit        1714850903 | 600.00 | 2,707.05 |
| 07/20 | 07/20 Online Payment 6381360634 To Southern California Edison | -65.51 | 2,641.54 |
| 07/20 | 07/20 Online Payment 6381367378 To Bank of America | -1,000.00 | 1,641.54 |
| 07/21 | Chase Quickpay Electronic Transfer 6384577590 From Pamela P Esquilio | 66.00 | 1,707.54 |
| 07/21 | Chase Quickpay Electronic Transfer 6385315167 From Pamela P Esquilio | 16.00 | 1,723.54 |
| 07/21 | Interest Payment | 0.02 | 1,723.56 |
| | **Ending Balance** | | **$1,723.56** |

A monthly Service Fee was not charged to your Chase Premier Plus Checking account. Here are the two ways you can
continue to avoid this fee during any statement period.
- Have an average qualifying deposit and investment balance of $15,000.00 or more
  (Your average qualifying deposit and investment balance was $15,041.00)

- OR, authorize us to make automatic payments to your qualifying Chase mortgage from your Chase account.
  (You do not have a qualifying Chase mortgage)

SB1067470-F1

2181

USAO_00000385

**CHASE ⬡**

June 21, 2017 through July 21, 2017
Primary Account: **000000426544180**

### CHASE PLUS SAVINGS

M̶I̶R̶I̶A̶M̶ A G̶E̶L̶B̶E̶R̶

Account Number: 000002936262161

### SAVINGS SUMMARY

| | AMOUNT |
|---|---|
| Beginning Balance | $24,626.78 |
| Deposits and Additions | 23,010.71 |
| ATM Withdrawals | -2,000.00 |
| Electronic Withdrawals | -15,000.00 |
| Other Withdrawals | -26,300.08 |
| Fees | -15.00 |
| Ending Balance | $4,322.41 |
| Annual Percentage Yield Earned This Period | 0.03% |
| Interest Paid This Period | $0.30 |
| Interest Paid Year-to-Date | $4.59 |

The monthly service fee for this account was waived as an added feature of Chase Premier Plus Checking account.

### TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $24,626.78 |
| 06/23 | 06/23 Online Transfer To Chk ...4180 Transaction#: 6315107821 | -5,000.00 | 19,626.78 |
| 06/23 | 06/23 Withdrawal | -2,500.00 | 17,126.78 |
| 07/03 | ATM Checking Transfer  07/03 2967 Michelson DR Ste A Irvine CA Card 4699 | -2,000.00 | 15,126.78 |
| 07/05 | 07/05 Withdrawal | -7,000.00 | 8,126.78 |
| 07/07 | Deposit   1698423705 | 16,510.41 | 24,637.19 |
| 07/07 | 07/07 Withdrawal | -6,800.00 | 17,837.19 |
| 07/08 | 07/08 Withdrawal | -5,000.00 | 12,837.19 |
| 07/09 | 07/09 Online Transfer To Chk ...4180 Transaction#: 6356169957 | -6,000.00 | 6,837.19 |
| 07/10 | 07/09 Online Transfer To Chk ...4180 Transaction#: 6356484365 | -4,000.00 | 2,837.19 |
| 07/10 | Savings Withdrawal Limit Fee | -5.00 | 2,832.19 |
| 07/10 | Savings Withdrawal Limit Fee | -5.00 | 2,827.19 |
| 07/12 | Fedwire Credit Via: Wells Fargo Bank/121000248 B/O: M̶i̶r̶i̶a̶m̶ G̶e̶l̶b̶e̶r̶ Rodrigues Pereira Irvine CA 926125621 Ref: Chase Nyc/Ctr/Bnf=M̶i̶r̶i̶a̶ G̶e̶l̶b̶e̶ Irvine, CA 92612/Ac-000000029362 Rfb=14921417 Imad: 0712l1B7033R012786 Trn: 4244309193Ff | 6,500.00 | 9,327.19 |
| 07/13 | 07/13 Withdrawal | -5,000.00 | 4,327.19 |
| 07/13 | Savings Withdrawal Limit Fee | -5.00 | 4,322.19 |
| 07/21 | Interest Payment | 0.30 | 4,322.49 |
| 07/21 | Federal Interest Withheld | -0.08 | 4,322.41 |
| | Ending Balance | | $4,322.41 |

You earned a higher interest rate on your Chase Plus Savings account during this statement period because you had a qualifying Chase Premier Plus Checking account.

Your account includes up to 6 withdrawals in each monthly statement period. You have been charged a Savings Withdrawal Limit Fee of $5.00 for each withdrawal over 6. You can avoid this fee if you have a balance of $15,000.00 or more in this account at the time of withdrawal.

Page 4 of 6

**SB1067470-F1**          **2182**

USAO_00000386

**CHASE** ⬡

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

July 22, 2017 through August 18, 2017
Primary Account: 000000426544180

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-935-9935 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |

00026392 DRE 703 141 23117 NNNNNNNNNNN T 1 000000000 14 0000
MIRIAM A GELFAND
330 AVATER...
IRVINE CA 92...



## CONSOLIDATED BALANCE SUMMARY

**ASSETS**

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Premier Plus Checking | 000000426544180 | $1,723.56 | $430.37 |
| Chase Plus Savings | 000002935262161 | 4,322.41 | 15,122.52 |
| Total | | $6,045.97 | $15,552.89 |
| | | | |
| TOTAL ASSETS | | $6,045.97 | $15,552.89 |

All Summary Balances shown are as of August 18, 2017 unless otherwise stated.   For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements.  Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.

## CHASE PREMIER PLUS CHECKING

MIRIAM A GELFAND                                     Account Number: 000000426544180

## CHECKING SUMMARY

| | AMOUNT |
|---|---|
| Beginning Balance | $1,723.56 |
| Deposits and Additions | 20,613.76 |
| Electronic Withdrawals | -3,881.95 |
| Other Withdrawals | -18,000.00 |
| Fees | -25.00 |
| Ending Balance | $430.37 |
| | |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.01 |
| Interest Paid Year-to-Date | $0.13 |

Page 1 of 4

**SB1067470-F1**                                          **2215**

USAO_00000389

**CHASE** 🔾

July 22, 2017 through August 18, 2017
Primary Account: 000000426544180

Your account ending in 2161 is linked to this account for overdraft protection.

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $1,723.56 |
| 07/24 | ATM Check Deposit         07/24 101 S Harbor Blvd Anaheim CA Card 4699 | 1,820.75 | 3,544.31 |
| 07/25 | 07/25 Withdrawal | -3,000.00 | 544.31 |
| 07/26 | Chase Quickpay Electronic Transfer 6393455579 From Pamela P Esquillo | 82.00 | 626.31 |
| 07/28 | Deposit     1674810106 | 356.00 | 982.31 |
| 07/28 | Deposit     1674810107 | 165.00 | 1,147.31 |
| 08/01 | 08/01 Online Payment 6411122597 To Citi Cards | -100.00 | 1,047.31 |
| 08/04 | ATM Check Deposit         08/04 2967 Michelson DR Ste A Irvine CA Card 4699 | 302.00 | 1,349.31 |
| 08/07 | ATM Check Deposit         08/07 17585 Harvard Ave Irvine CA Card 4699 | 6,500.00 | 7,849.31 |
| 08/07 | New American Fnd Naf Paymnt          PPD ID: 35058 | -1,181.95 | 6,667.36 |
| 08/08 | ATM Check Deposit         08/08 2967 Michelson DR Ste A Irvine CA Card 4699 | 1,250.00 | 7,917.36 |
| 08/09 | Online Transfer From Mma ...2161 Transaction#: 6431096532 | 10,000.00 | 17,917.36 |
| 08/09 | Chase Quickpay Electronic Transfer 6429412746 To Z Campbell | -1,100.00 | 16,817.36 |
| 08/09 | 08/09 Withdrawal | -15,000.00 | 1,817.36 |
| 08/10 | Chase Quickpay Electronic Transfer 6432094465 From Pamela P Esquillo | 56.00 | 1,873.36 |
| 08/10 | 08/09 Online Payment 6431912095 To Chase Cardmember Services | -500.00 | 1,373.36 |
| 08/10 | 08/09 Online Payment 6431912091 To American Express | -500.00 | 873.36 |
| 08/10 | 08/10 Online Payment 6432111881 To Chase Cardmember Services | -500.00 | 373.36 |
| 08/17 | Chase Quickpay Electronic Transfer 6448841699 From Pamela P Esquillo | 41.00 | 414.36 |
| 08/17 | Chase Quickpay Electronic Transfer 6448840672 From Pamela P Esquillo | 41.00 | 455.36 |
| 08/18 | Interest Payment | 0.01 | 455.37 |
| 08/18 | Monthly Service Fee | -25.00 | 430.37 |
| | Ending Balance | | $430.37 |

**WANT TO AVOID PAYING A MONTHLY SERVICE FEE ON YOUR CHECKING ACCOUNT?**

A monthly Service Fee was charged to your Chase Premier Plus Checking account.  Here are the two ways you can avoid this fee during any statement period.
• Have an average qualifying deposit and investment balance of at least $15,000.00 during your statement period.
(Your average qualifying deposit and investment balance was $7,224.00)

*Talk to a banker about transferring your balances to Chase today!*

• OR, authorize us to make automatic payments to your qualifying Chase mortgage from your Chase account.
(You do not have a qualifying Chase mortgage.)

*Talk to a banker about a Chase mortgage!*

Stop in today and explore all Chase has to offer.

Page 2 of 4

**SB1067470-F1**                                          **2216**

USAO_00000390

**CHASE** ⬡

July 22, 2017 through August 18, 2017
Primary Account: 000000426544180

### CHASE PLUS SAVINGS

MIRIAM A GELFAND                                    Account Number: 000002936262161



### SAVINGS SUMMARY

| | AMOUNT |
|---|---|
| Beginning Balance | $4,322.41 |
| Deposits and Additions | 55,000.14 |
| Electronic Withdrawals | -11,300.00 |
| Other Withdrawals | -32,900.03 |
| Ending Balance | $15,122.52 |
| Annual Percentage Yield Earned This Period | 0.03% |
| Interest Paid This Period | $0.14 |
| Interest Paid Year-to-Date | $4.73 |

The monthly service fee for this account was waived as an added feature of Chase Premier Plus Checking account.

### TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $4,322.41 |
| 07/25 | 07/25 Withdrawal | -3,000.00 | 1,322.41 |
| 07/28 | Fedwire Credit Via: Wells Fargo Bank/121000248 B/O: Miriam A Gelfand Irvine CA 926125621 Ref: Chase Nyc/Ctr/Bnf=Miriam A Gelfand Irvine, CA 92612/Ac-000000029362 Rf B=14974331 Imad: 072811B7032R014827 Tm: 5001609299Fl | 20,000.00 | 21,322.41 |
| 07/28 | 07/28 Withdrawal | -20,000.00 | 1,322.41 |
| 08/07 | Transfer To Chk Xxxxxx5158 | -1,300.00 | 22.41 |
| 08/09 | Chips Credit Via: Branch Banking And Trust Company/0160 B/O: Eve M Gelfand Durham NC 27703-8108 Ref: Nbnf=Miriam A Gelfand Irvine, CA 92812/Ac-000000029362 Org=/0005296381 359 Durham NC 27703-8108 Obi=Transf Erring Money To Daughters Account. Ssn: 0304179 Tm: 5944300221Fc | 15,000.00 | 15,022.41 |
| 08/09 | 08/09 Online Transfer To Chk ...4180 Transaction#: 6431096532 | -10,000.00 | 5,022.41 |
| 08/10 | Fedwire Credit Via: Wells Fargo Bank/121000248 B/O: Miriam A Gelfand IRA TD Ameritralrvine CA 926125621 Ref: Chase Nyc/Ctr/Bnf=Miriam A Gelfand Irvine, CA 92612/Ac-000000029362 Rf B=15018402 Imad: 0810I1B7031R008489 Tm: 3328909222Ff | 20,000.00 | 25,022.41 |
| 08/10 | 08/10 Withdrawal | -9,900.00 | 15,122.41 |
| 08/18 | Interest Payment | 0.14 | 15,122.55 |
| 08/18 | Federal Interest Withheld | -0.03 | 15,122.52 |
| | Ending Balance | | $15,122.52 |

You earned a higher interest rate on your Chase Plus Savings account during this statement period because you had a qualifying Chase Premier Plus Checking account.

Page 3 of 4

**SB1067470-F1**                                                                 **2217**

USAO_00000391

**CHASE O**
JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

December 30, 2017 through January 31, 2018
Primary Account: 000000426544180

**CUSTOMER SERVICE INFORMATION**

| Web site: | Chase.com |
|---|---|
| Service Center: | 1-800-935-9935 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |

00074844 DRE 703 141 03318 NNNNNNNNNNN T 1 000000000 69 0000

MIRIAM A GELFAND



## CONSOLIDATED BALANCE SUMMARY

**ASSETS**

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Total Checking | 000000426544180 | $4,556.92 | $4,186.43 |
| Chase Savings | 00002936262161 | 2,353.21 | 3,074.37 |
| Total | | $6,910.13 | $7,260.80 |

| TOTAL ASSETS | | $6,910.13 | $7,260.80 |
|---|---|---|---|

All Summary Balances shown are as of January 31, 2018 unless otherwise stated.   For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements.  Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.

## CHASE TOTAL CHECKING

MIRIAM A GELFAND                                    Account Number: 000000426544180

## CHECKING SUMMARY

| | AMOUNT |
|---|---|
| Beginning Balance | $4,556.92 |
| Deposits and Additions | 20,037.56 |
| Checks Paid | -1,010.00 |
| ATM & Debit Card Withdrawals | -2,543.89 |
| Electronic Withdrawals | -10,532.16 |
| Other Withdrawals | -6,310.00 |
| Fees | -12.00 |
| Ending Balance | $4,186.43 |

Your account ending in 2161 is linked to this account for overdraft protection.

Page 1 of 6

**SB1067470-F1**                                    **2369**

USAO_00000393

**CHASE** ◆

December 30, 2017 through January 31, 2018
Primary Account: **000000426544180**

Interest paid in 2017 for account 000000426544180 was $0.17.

## CHECKS PAID

| CHECK NUMBER | DATE PAID | AMOUNT |
|---|---|---|
| 1082 ^ | 01/26 | $10.00 |
| 1085 * ^ | 01/12 | 1,000.00 |
| **Total Checks Paid** | | **$1,010.00** |

If you see a check description in the Transaction Detail section, it means your check has already been converted to electronic payment. Because of this, we're not able to return the check to you or show you an image on Chase.com.

* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

## TRANSACTION DETAIL

| DATE | DESCRIPTION | | AMOUNT | BALANCE |
|---|---|---|---|---|
| | Beginning Balance | | | $4,556.92 |
| 01/02 | Remote Online Deposit | 1 | 2,427.71 | 6,984.63 |
| 01/02 | Remote Online Deposit | 1 | 1,250.00 | 8,234.63 |
| 01/02 | Remote Online Deposit | 1 | 129.71 | 8,364.34 |
| 01/03 | Quickpay With Zelle Payment From Eric Campbell 6793605250 | | 500.00 | 8,864.34 |
| 01/03 | Quickpay With Zelle Payment From Eric Campbell 6793597944 | | 1.00 | 8,865.34 |
| 01/04 | 01/04 Online Payment 6798283185 To Uppc | | -35.80 | 8,829.54 |
| 01/04 | 01/04 Online Payment 6798285522 To American Express | | -500.00 | 8,329.54 |
| 01/04 | 01/04 Online Payment 6798287872 To Chase Cardmember Services | | -500.00 | 7,829.54 |
| 01/04 | 01/04 Online Payment 6798289444 To AT&T Mobility | | -119.83 | 7,709.71 |
| 01/04 | 01/04 Online Payment 6798300486 To Citi Cards | | -500.00 | 7,209.71 |
| 01/04 | 01/04 Online Payment 6798302162 To Synchrony Bank | | -500.00 | 6,709.71 |
| 01/04 | 01/04 Online Payment 6798303019 To Synchrony Bank | | -250.00 | 6,459.71 |
| 01/04 | 01/04 Online Payment 6798303758 To Bank of America | | -250.00 | 6,209.71 |
| 01/04 | 01/04 Online Payment 6798304922 To Best Buy Credit Services | | -350.00 | 5,859.71 |
| 01/05 | New American Fnd Naf Paymnt          PPD ID: 35058 | | -1,181.95 | 4,677.76 |
| 01/08 | ATM Check Deposit          01/08 2967 Michelson DR Ste A Irvine CA Card 4699 | | 4,972.00 | 9,649.76 |
| 01/08 | Quickpay With Zelle Payment From Pamela P Esquillo 6803530608 | | 82.00 | 9,731.76 |
| 01/08 | Card Purchase          01/06 Mb Fin Svcs 800-654-6222 MI Card 4699 | | -2,463.89 | 7,267.87 |
| 01/08 | Algpay Online PA Algpay Onl Watermarke Comm Web ID: 1800948598 | | -1,279.49 | 5,988.38 |
| 01/11 | Bmwfinancial Svs Bmwfs Pymt 225329388          Tel ID: 1222568977 | | -2,122.48 | 3,865.90 |
| 01/12 | Check          # 1085 | | -1,000.00 | 2,865.90 |
| 01/16 | ATM Check Deposit          01/15 2967 Michelson DR Ste A Irvine CA Card 4699 | | 2,629.60 | 5,495.50 |
| 01/16 | Remote Online Deposit | 1 | 1,500.00 | 6,995.50 |
| 01/16 | Quickpay With Zelle Payment From Pamela P Esquillo 6824921371 | | 41.00 | 7,036.50 |
| 01/16 | ATM Withdrawal          01/15 2967 Michelson DR Ste A Irvine CA Card 4699 | | -40.00 | 6,996.50 |
| 01/17 | 01/17 Online Payment 6830599288 To Orange County Diagnostics | | -475.26 | 6,521.24 |
| 01/22 | ATM Check Deposit          01/22 2967 Michelson DR Ste A Irvine CA Card 4699 | | 202.00 | 6,723.24 |
| 01/22 | Deposit          1744841589 | | 2,254.59 | 8,977.83 |
| 01/22 | Remote Online Deposit | 1 | 1,250.00 | 10,227.83 |

Page 2 of 6

**SB1067470-F1**

**2370**

USAO_00000394

CHASE ◉

December 30, 2017 through January 31, 2018
Primary Account: 000000426544180

## TRANSACTION DETAIL *(continued)*

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | ATM Withdrawal       01/22 2967 Michelson DR Ste A Irvine CA Card 4699 | -40.00 | 10,187.83 |
| 01/22 | 01/22 Online Payment 6842563723 To Southern California Gas | -36.89 | 10,150.94 |
| 01/22 | 01/22 Online Payment 6842568569 To AT&T U-Verse | -216.05 | 9,934.89 |
| 01/24 | Quickpay With Zelle Payment From Pamela P Esquillo 6845722817 | 41.00 | 9,975.89 |
| 01/25 | Deposit    1749044165 | 190.00 | 10,165.89 |
| 01/26 | ATM Check Deposit       01/26 101 S Harbor Blvd Anaheim CA Card 4699 | 525.95 | 10,691.84 |
| 01/26 | Check       # 1082 | -10.00 | 10,681.84 |
| 01/29 | Quickpay With Zelle Payment From Pamela P Esquillo 6854304609 | 41.00 | 10,722.84 |
| 01/29 | 01/27 Online Payment 6854893947 To Bank of America | -250.00 | 10,472.84 |
| 01/29 | 01/27 Online Payment 6854901661 To Nordstrom's | -461.49 | 10,011.35 |
| 01/29 | 01/27 Online Payment 6854902483 To Uppc | -37.67 | 9,973.68 |
| 01/29 | 01/27 Online Payment 6854905457 To American Express | -250.00 | 9,723.68 |
| 01/29 | 01/27 Online Payment 6854908838 To Chase Cardmember Services | -1,000.00 | 8,723.68 |
| 01/29 | 01/27 Withdrawal | -6,000.00 | 2,723.68 |
| 01/29 | 01/28 Online Payment 6857395972 To Southern California Gas | -15.25 | 2,708.43 |
| 01/30 | Deposited Item Returned       NSF 1St       099001162
# of Items00001Ck#:0000000109                                           Dep
Amt0000052595    Dep Date012618Ck Amt0000031000
Svc Fee001200 | -310.00 | 2,398.43 |
| 01/30 | Deposit Item Returned Fee: 01 NSF 1St       099001162
# of Items00001Ck#:0000000109                                           Dep
Amt0000052595    Dep Date012618Ck Amt0000001200
Svc Fee001200 | -12.00 | 2,386.43 |
| 01/31 | Online Transfer From Sav ...2161 Transaction#: 6864858899 | 2,000.00 | 4,386.43 |
| 01/31 | 01/31 Online Payment 6777995939 To Best Buy Credit Services | -200.00 | 4,186.43 |
| | **Ending Balance** | | **$4,186.43** |

A monthly Service Fee was not charged to your Chase Total Checking account.  Here are the three ways you can avoid
this fee during any statement period.

- Have direct deposits totaling $500.00 or more.
  (You did not have a direct deposit this statement period)

- OR, keep a minimum daily balance in this checking account of $1,500.00 or more
  (Your minimum daily balance was $2,708.43)

- OR, keep an average daily balance of qualifying linked deposits and investments of $5,000.00 or more
  (Your average daily balance of qualifying linked deposits and investments was $9,670.22)

Page 3 of 6

SB1067470-F1                                                       2371

USAO_00000395

**CHASE** ⬡

December 30, 2017 through January 31, 2018
Primary Account: 000000426544180

| CHASE SAVINGS | |
|---|---|
| MIRIAM A GELLAND | Account Number: 000002936262161 |

### SAVINGS SUMMARY

| | AMOUNT |
|---|---|
| Beginning Balance | $2,353.21 |
| Deposits and Additions | 133,370.16 |
| ATM Withdrawals | -800.00 |
| Electronic Withdrawals | -2,000.00 |
| Other Withdrawals | -129,799.00 |
| Fees | -50.00 |
| Ending Balance | $3,074.37 |
| | |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.03 |
| Interest Paid Year-to-Date | $0.03 |

Interest paid in 2017 for account 000002936262161 was $5.65.

### TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $2,353.21 |
| 01/24 | Fedwire Credit Via: Wells Fargo Bank/121000248 B/O: Miriam Anne Gelland IRA TD Ameritrairvine CA 926125621 Ref: Chase Nyc/Ctr/Bnf=Miriam A Gelland Irvine, CA 926125621/Ac-00000002936 2 Rfb=15723095 Imad: 0124I1B7032R010571 Tm: 3317109024FI | 78,370.13 | 80,723.34 |
| 01/24 | 01/24 Withdrawal | -45,000.00 | 35,723.34 |
| 01/24 | Domestic Incoming Wire Fee | -15.00 | 35,708.34 |
| 01/25 | 01/25 Withdrawal | -9,900.00 | 25,808.34 |
| 01/25 | 01/25 Withdrawal | -9,900.00 | 15,908.34 |
| 01/25 | 01/25 Withdrawal | -13,000.00 | 2,908.34 |
| 01/29 | 01/27 Withdrawal | -2,000.00 | 908.34 |
| 01/29 | ATM Withdrawal       01/27 2967 Michelson DR Ste A Irvine CA Card 4699 | -800.00 | 108.34 |
| 01/30 | Fedwire Credit Via: Branch Banking And Trust Company/053101121 B/O: Eve M Gelland Durham NC 27703-8108 Ref: Chase Nyc/Ctr/Bnf=Miriam A Gelland Irvine, CA 926125621/Ac-00000002936 2 Rfb=FED18O18O-502 Obi=Miriam A Nne Gelland Bbi=/Bnf/Miriam Anne Gll d Imad: 0130E3Cp021C001310 Tm: 3659409030FI | 55,000.00 | 55,108.34 |
| 01/30 | 01/30 Withdrawal | -9,999.00 | 45,109.34 |
| 01/30 | 01/30 Withdrawal | -40,000.00 | 5,109.34 |
| 01/30 | Domestic Incoming Wire Fee | -15.00 | 5,094.34 |
| 01/30 | Savings Withdrawal Limit Fee | -5.00 | 5,089.34 |
| 01/30 | Savings Withdrawal Limit Fee | -5.00 | 5,084.34 |
| 01/31 | 01/31 Online Transfer To Chk ...4180 Transaction#: 6864858899 | -2,000.00 | 3,084.34 |
| 01/31 | Savings Withdrawal Limit Fee | -5.00 | 3,079.34 |
| 01/31 | Interest Payment | 0.03 | 3,079.37 |
| 01/31 | Monthly Service Fee | -5.00 | 3,074.37 |
| | Ending Balance | | $3,074.37 |

Page 4 of 6

**SB1067470-F1**                                                    **2372**

## CHASE ◉
JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

February 01, 2018 through February 28, 2018
Primary Account: 000000426544180

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-935-9935 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |

00076775 DRE 703 141 06018 NNNNNNNNNN T  1 000000000 69 0000
MIRIAM A GELFAND
WATERMARK RPL



## CONSOLIDATED BALANCE SUMMARY

### ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Total Checking | 000000426544180 | $4,186.43 | $235.90 |
| Chase Savings | 000002936262161 | 3,074.37 | 25,559.38 |
| **Total** | | **$7,260.80** | **$25,795.28** |
| | | | |
| **TOTAL ASSETS** | | **$7,260.80** | **$25,795.28** |

All Summary Balances shown are as of February 28, 2018 unless otherwise stated.  For details of your retirement
accounts, credit accounts or securities accounts, you will receive separate statements.  Balance summary information for
annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness
or accuracy.

## CHASE TOTAL CHECKING

MIRIAM A GELFAND                                                Account Number: 000000426544180

## CHECKING SUMMARY

| | AMOUNT |
|---|---|
| Beginning Balance | $4,186.43 |
| Deposits and Additions | 30,142.60 |
| Checks Paid | -19.00 |
| ATM & Debit Card Withdrawals | -4,200.00 |
| Electronic Withdrawals | -9,274.13 |
| Other Withdrawals | -20,600.00 |
| Ending Balance | $235.90 |

Your account ending in 2161 is linked to this account for overdraft protection.

Interest paid in 2017 for account 000000426544180 was $0.17.

Page 1 of 4

**SB1067470-F1**                                                        **2424**

**CHASE** ⬟

February 01, 2018 through February 28, 2018
Primary Account: 000000426544180

## CHECKS PAID

| CHECK NUMBER | DATE PAID | AMOUNT |
|---|---|---|
| 1086 ^ | 02/07 | $19.00 |
| Total Checks Paid | | $19.00 |

If you see a check description in the Transaction Detail section, it means your check has already been converted for electronic payment. Because of this, we're not able to return the check to you or show you an image on Chase.com.
^ An image of this check may be available for you to view on Chase.com.

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $4,186.43 |
| 02/01 | Mbfs      Web Pay     5000503352001   Web ID: 3208653034 | -2,463.89 | 1,722.54 |
| 02/02 | ATM Check Deposit      02/02 2967 Michelson DR Ste A Irvine CA Card 4699 | 23,767.61 | 25,490.15 |
| 02/02 | ATM Check Deposit      02/02 101 S Harbor Blvd Anaheim CA Card 4699 | 135.00 | 25,625.15 |
| 02/05 | Quickpay With Zelle Payment From Pamela P Esquillo 6875822366 | 82.00 | 25,707.15 |
| 02/05 | 02/03 Withdrawal | -12,000.00 | 13,707.15 |
| 02/05 | New American Fnd Naf Paymnt                PPD ID: 35058 | -1,187.14 | 12,520.01 |
| 02/06 | Airbonne Internat Vid              PPD ID: 4330762250 | 7.65 | 12,527.66 |
| 02/07 | Check                # 1086 | -19.00 | 12,508.66 |
| 02/08 | Ice Management,  Direct Dep              PPD ID: 9111111101 | 218.97 | 12,727.63 |
| 02/08 | Bmwfinancial Svs Bmwfs Pymt 226750161      Tel ID: 1222568977 | -2,028.36 | 10,699.27 |
| 02/12 | ATM Check Deposit      02/11 17585 Harvard Ave Irvine CA Card 4699 | 3,057.00 | 13,756.27 |
| 02/12 | ATM Check Deposit      02/12 2967 Michelson DR Ste A Irvine CA Card 4699 | 210.00 | 13,966.27 |
| 02/12 | Quickpay With Zelle Payment From Pamela P Esquillo 6895247176 | 82.00 | 14,048.27 |
| 02/12 | Card Purchase        02/09 Usaa Insurance Pymt 800-531-8111 TX Card 4699 | -700.00 | 13,348.27 |
| 02/12 | ATM Withdrawal      02/12 2967 Michelson DR Ste A Irvine CA Card 4699 | -2,000.00 | 11,348.27 |
| 02/12 | 02/12 Withdrawal | -5,000.00 | 6,348.27 |
| 02/13 | Deposit      944797146 | 30.00 | 6,378.27 |
| 02/13 | 02/13 Withdrawal | -3,600.00 | 2,778.27 |
| 02/14 | ATM Withdrawal      02/14 13128 Jamboree Rd Irvine CA Card 4699 | -500.00 | 2,278.27 |
| 02/20 | Quickpay With Zelle Payment From Pamela P Esquillo 6911597982 | 41.00 | 2,319.27 |
| 02/21 | Remote Online Deposit      1 | 1,250.00 | 3,569.27 |
| 02/21 | 02/21 Online Payment 6919292703 To Citi Cards | -1,030.43 | 2,538.84 |
| 02/22 | Ice Management,  Direct Dep              PPD ID: 9111111101 | 263.37 | 2,802.21 |
| 02/23 | Quickpay With Zelle Payment From Giovanny Marin 6927971441 | 330.00 | 3,132.21 |
| 02/23 | 02/23 Payment To Chase Card Ending IN 9756 | -900.00 | 2,232.21 |
| 02/26 | ATM Check Deposit      02/24 2967 Michelson DR Ste A Irvine CA Card 4699 | 425.00 | 2,657.21 |
| 02/26 | Remote Online Deposit | 90.00 | 2,747.21 |
| 02/26 | Quickpay With Zelle Payment From Pamela P Esquillo 6930075530 | 41.00 | 2,788.21 |
| 02/26 | ATM Withdrawal      02/24 2967 Michelson DR Ste A Irvine CA Card 4699 | -1,000.00 | 1,788.21 |
| 02/26 | 02/24 Online Payment 6930550423 To Southern California Gas | -1.80 | 1,786.41 |
| 02/26 | Quickpay With Zelle Payment To Z 6932209695 | -500.00 | 1,286.41 |
| 02/26 | 02/26 Online Payment 6927247311 To Synchrony Bank | -288.00 | 998.41 |
| 02/26 | 02/26 Online Payment 6927244880 To Synchrony Bank | -250.00 | 748.41 |

Page 2 of 4

**SB1067470-F1**

**2425**

USAO_00000400

**CHASE ◉**

February 01, 2018 through February 28, 2018
Primary Account: 000000426544180

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| 02/26 | Blue Shield of C Bs of CA   676193434387   Tel ID: 8940360524 | -124.51 | 623.90 |
| 02/27 | Remote Online Deposit          1 | 112.00 | 735.90 |
| 02/27 | Quickpay With Zelle Payment To Z 6935220090 | -300.00 | 435.90 |
| 02/28 | 02/28 Online Payment 6863121190 To Best Buy Credit Services | -200.00 | 235.90 |
| | **Ending Balance** | | **$235.90** |

A monthly Service Fee was **not** charged to your Chase Total Checking account.  Here are the three ways you can avoid this fee during any statement period.

- **Have direct deposits totaling $500.00 or more.**
  (Your total direct deposits this period were $489.99. Note: some deposits may be listed on your previous statement)

- **OR, keep a minimum daily balance in this checking account of $1,500.00 or more**
  (Your minimum daily balance was $623.90)

- **OR, keep an average daily balance of qualifying linked deposits and investments of $5,000.00 or more**
  (Your average daily balance of qualifying linked deposits and investments was $7,944.03)

## CHASE SAVINGS

MIRIAM A GELFAND                                                    Account Number: 000002936262161

## SAVINGS SUMMARY

| | AMOUNT |
|---|--------|
| Beginning Balance | $3,074.37 |
| Deposits and Additions | 25,000.01 |
| ATM Withdrawals | -2,500.00 |
| Fees | -15.00 |
| Ending Balance | $25,559.38 |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.01 |
| Interest Paid Year-to-Date | $0.04 |

Interest paid in 2017 for account 000002936262161 was $5.65.

Page 3 of 4

**SB1067470-F1**                                                    **2426**

**CHASE** ◯

February 01, 2018 through February 28, 2018
Primary Account: 000000426544180

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| | Beginning Balance | | $3,074.37 |
| 02/02 | ATM Withdrawal        02/02 101 S Harbor Blvd Anaheim CA Card 4699 | -2,500.00 | 574.37 |
| 02/28 | Fedwire Credit Via: United States Bank N.A/121122676 B/O: Chicago Title Company Orange County san Diego,CA,92108 Ref: Chase Nyc/Ctr/Bnf=Midas A Gagnad Irvine, CA 926125621/Ac-00000002936 2 Rfb=1802280B9145 Obi=Fn 687018004 10 PO NA NA Re Depos It/3309 Wafem Arke Place/Gefind/Ph949-263-6975 P Rep. Addr  Imad: 0228L3Lf151C004231 Trn: 6937109059Ff | 25,000.00 | 25,574.37 |
| 02/28 | Domestic Incoming Wire Fee | -15.00 | 25,559.37 |
| 02/28 | Interest Payment | 0.01 | 25,559.38 |
| | Ending Balance | | $25,559.38 |

A monthly Service Fee was **not** charged to your Chase Savings account.  You can continue to avoid this fee during any
statement period by keeping a minimum daily balance in your account of $300.00 or more.
(Your minimum daily balance was $574)

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the
address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is
incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error
appeared.  Be prepared to give us the following information:
 •    Your name and account number
 •    The dollar amount of the suspected error
 •    A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new
accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes
us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is
incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears,
you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the
Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by
JPMorgan Chase Bank, N.A.  Member FDIC

 JPMorgan Chase Bank, N.A. Member FDIC

Page 4 of 4

**SB1067470-F1**                                                                 **2427**

USAO_00000402

**CHASE** 
JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218-2051

March 01, 2018 through March 30, 2018
Primary Account: 000000426544180

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-935-9935 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |

00078604 DRE 703 141 09018 NNNNNNNNNNN T 1 000000000 69 0000
MXXXXM A GXXXXXO
3309 WATERMARKE PL
IRVINE CA 92612-5621



## We updated our Deposit Account Agreement

The following changes were made March 11, 2018:

We published an updated version of our Deposit Account Agreement. You can get the latest agreement at chase.com/disclosures, at a branch or by request when you call us. Here's what you should know:

- You can now request a stop payment on a check through the Chase Mobile® app. You can also still do this on chase.com, over the phone or in a branch. (General Account Terms, Section B, Stop payments)

- We're starting to use a new payment network that allows businesses to send you real-time payments when you provide your account and routing numbers. When you accept a real-time payment, you confirm that you're not acting on the behalf of someone who is not a U.S. citizen or resident. (General Account Terms, Section I, Rules governing your account)

- We updated the language to clarify how to place a stop payment for electronic funds transfers. (Electronic Funds Transfer Service Terms, Section G, Preauthorized (recurring) transfers and stop payments)

Please call us at the number on this statement if you have any questions.

## CONSOLIDATED BALANCE SUMMARY

**ASSETS**

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Total Checking | 000000426544180 | $235.90 | $3,856.81 |
| Chase Savings | 00002936262161 | 25,559.38 | 1,121.78 |
| Total | | $25,795.28 | $4,978.59 |

| | | | |
|---|---|---|---|
| TOTAL ASSETS | | $25,795.28 | $4,978.59 |

Page 1 of 6

SB1067470-F1                                    2462

USAO_00000403

**CHASE** ⬡

March 01, 2018 through March 30, 2018
Primary Account: 000000426544180

## CHASE TOTAL CHECKING

MIRIAM A GELFAND                                      Account Number: 000000426544180

## CHECKING SUMMARY

|  | AMOUNT |
|---|---|
| Beginning Balance | $235.50 |
| Deposits and Additions | 17,904.30 |
| Checks Paid | -405.00 |
| ATM & Debit Card Withdrawals | -6,585.00 |
| Electronic Withdrawals | -7,212.39 |
| Other Withdrawals | -81.00 |
| Ending Balance | $3,856.81 |

Your account ending in 2161 is linked to this account for overdraft protection.

Interest paid in 2017 for account 000000426544180 was $0.17.

## CHECKS PAID

| CHECK NUMBER | DATE PAID | AMOUNT |
|---|---|---|
| 1088 ^ | 03/02 | $405.00 |
| Total Checks Paid | | $405.00 |

If you see a check description in the Transaction Detail section, it means your check has already been converted to an electronic payment. Because of this, we're not able to return the check to you or show you an image on Chase.com.
^ An image of this check may be available for you to view on Chase.com.

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
|  | Beginning Balance |  | $235.50 |
| 03/02 | ODP Transfer From Savings 00002936262161 | 169.10 | 405.00 |
| 03/02 | Check          # 1088 | -405.00 | 0.00 |
| 03/05 | Remote Online Deposit          1 | 1,500.00 | 1,500.00 |
| 03/05 | Remote Online Deposit          1 | 500.00 | 2,000.00 |
| 03/05 | Remote Online Deposit          1 | 129.60 | 2,129.60 |
| 03/05 | Online Transfer From Sav ...2161 Transaction#: 6956621638 | 7,000.00 | 9,129.60 |
| 03/05 | Online Transfer From Sav ...2161 Transaction#: 6951695472 | 5,000.00 | 14,129.60 |
| 03/05 | ATM Withdrawal          03/03 17585 Harvard Ave Irvine CA Card 4699 | -3,000.00 | 11,129.60 |
| 03/06 | ATM Check Deposit          03/06 17585 Harvard Ave Irvine CA Card 4699 | 1,250.00 | 12,379.60 |
| 03/06 | Quickpay With Zelle Payment To Z 6959767875 | -1.00 | 12,378.60 |
| 03/06 | Quickpay With Zelle Payment To Z 6959776731 | -300.00 | 12,078.60 |
| 03/06 | ATM Withdrawal          03/06 17585 Harvard Ave Irvine CA Card 4699 | -3,000.00 | 9,078.60 |
| 03/06 | Mbfs          Web Pay    5000503352001   Web ID: 3208853034 | -2,500.00 | 6,578.60 |
| 03/07 | 03/07 Online Payment 6962422529 To AT&T U-Verse | -101.46 | 6,477.14 |
| 03/07 | 03/07 Online Payment 6962422533 To AT&T Mobility | -100.00 | 6,377.14 |

Page 2 of 6

**SB1067470-F1**                                                        **2463**

**CHASE** 

March 01, 2018 through March 30, 2018
Primary Account: 000000426544180

## TRANSACTION DETAIL (continued)

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| 03/07 | 03/07 Online Payment 6962422544 To Bank of America | -60.00 | 6,317.14 |
| 03/07 | Bmwfinancial Svs Bmwfs Pymt 226188733      Tel ID: 1222568977 | -2,028.36 | 4,288.78 |
| 03/08 | Ice Management, Direct Dep           PPD ID: 9111111101 | 143.32 | 4,432.10 |
| 03/12 | Quickpay With Zelle Payment From Pamela P Esquillo 6973680927 | 41.00 | 4,473.10 |
| 03/12 | ATM Withdrawal          03/10 23703 Calabasas Rd Calabasas CA Card 4699 | -500.00 | 3,973.10 |
| 03/12 | Quickpay With Zelle Payment To Z 6971908652 | -300.00 | 3,673.10 |
| 03/12 | 03/11 Online Payment 6972567425 To Southern California Edison | -92.34 | 3,580.76 |
| 03/12 | 03/11 Online Payment 6972568704 To American Express | -227.00 | 3,353.76 |
| 03/12 | 03/11 Online Payment 6972569620 To Chase Cardmember Services | -555.00 | 2,798.76 |
| 03/13 | ATM Check Deposit      03/13 17585 Harvard Ave Irvine CA Card 4699 | 210.00 | 3,008.76 |
| 03/13 | 03/13 Online Payment 6976899481 To Uppc | -37.23 | 2,971.53 |
| 03/14 | 03/14 Online Payment 6978626320 To Southern California Edison | -130.00 | 2,841.53 |
| 03/16 | Quickpay With Zelle Payment From Pamela P Esquillo 6988480195 | 41.00 | 2,882.53 |
| 03/19 | Card Purchase       03/17 Anaheim Ice Anaheim CA Card 4699 | -85.00 | 2,797.53 |
| 03/20 | ATM Check Deposit      03/20 2967 Michelson DR Ste A Irvine CA Card 4699 | 1,635.00 | 4,432.53 |
| 03/21 | DR Due To ATM/Dep Error | -81.00 | 4,351.53 |
| 03/22 | Ice Management, Direct Dep           PPD ID: 9111111101 | 285.28 | 4,636.81 |
| 03/23 | 03/22 Online Payment 7002216553 To Miller And Gerber | -580.00 | 4,056.81 |
| 03/29 | 03/29 Online Payment 6938384396 To Best Buy Credit Services | -200.00 | 3,856.81 |
| | **Ending Balance** | | **$3,856.81** |

A monthly Service Fee was not charged to your Chase Total Checking account.  Here are the three ways you can avoid this fee during any statement period.

* **Have direct deposits totaling $500.00 or more.**
  (Your total direct deposits this period were $428.60. Note: some deposits may be listed on your previous statement)

* **OR, keep a minimum daily balance in this checking account of $1,500.00 or more**
  (Your minimum daily balance was $0.00)

* **OR, keep an average daily balance of qualifying linked deposits and investments of $5,000.00 or more**
  (Your average daily balance of qualifying linked deposits and investments was $11,175.87)

Page 3 of 6

**SB1067470-F1**                                                    **2464**

USAO_00000405

# CHASE ◯

March 01, 2018 through March 30, 2018
Primary Account: 000000426544180

## CHASE SAVINGS

MR M A G⬛⬛⬛⬛

Account Number: 000002936262161

### SAVINGS SUMMARY

| | AMOUNT |
|---|---|
| Beginning Balance | $25,559.38 |
| Deposits and Additions | 71,256.51 |
| Electronic Withdrawals | -12,000.00 |
| Other Withdrawals | -83,669.11 |
| Fees | -25.00 |
| **Ending Balance** | **$1,121.78** |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.06 |
| Interest Paid Year-to-Date | $0.10 |

Interest paid in 2017 for account 000002936262161 was $5.65.

### TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $25,559.38 |
| 03/01 | 03/01 Withdrawal | -25,000.00 | 559.38 |
| 03/02 | Fedwire Credit Via: United States Bank N.A/121122676 B/O: Chicago Title Company Orange Countysan Diego,CA,92108 Ref: Chase Nyc/Ctr/Bnf=M⬛⬛ A G⬛⬛⬛ Irvine, CA 926125621/Ac-00000002936 2 Rfb=180302049597 Obi=Fp 587018004 10 PO NA NA Re Prcce Eds/3309 Water Marke Place/Go⬛⬛⬛/Ph:949-263-6975 Prop. Addr Imad: 0302J1Q5040C003984 Tm: 6482009081F1 | 71,256.45 | 71,815.83 |
| 03/02 | 03/02 Withdrawal | -20,000.00 | 51,815.83 |
| 03/02 | ODP Transfer To Checking 000000426544180 | -169.10 | 51,646.73 |
| 03/02 | Domestic Incoming Wire Fee | -15.00 | 51,631.73 |
| 03/05 | 03/03 Online Transfer To Chk ...4180 Transaction#: 6951695472 | -5,000.00 | 46,631.73 |
| 03/05 | 03/03 Withdrawal | -10,000.00 | 36,631.73 |
| 03/05 | 03/05 Online Transfer To Chk ...4180 Transaction#: 6956521638 | -7,000.00 | 29,631.73 |
| 03/05 | Savings Withdrawal Limit Fee | -5.00 | 22,626.73 |
| 03/06 | 03/06 Withdrawal | -21,500.00 | 1,126.73 |
| 03/06 | Savings Withdrawal Limit Fee | -5.00 | 1,121.73 |
| 03/30 | Interest Payment | 0.06 | 1,121.79 |
| 03/30 | Federal Interest Withhold | -0.01 | 1,121.78 |
| | **Ending Balance** | | **$1,121.78** |

A monthly Service Fee was not charged to your Chase Savings account. You can continue to avoid this fee during any statement period by keeping a minimum daily balance in your account of $300.00 or more.
(Your minimum daily balance was $559)

Your account includes up to 6 withdrawals in each monthly statement period. You have been charged a Savings Withdrawal Limit Fee of $5.00 for each withdrawal over 6.

SB1067470-F1

2465

USAO_00000406



Deposit cash or checks at a
Chase DepositFriendly (SM) ATM.
An image of your check can
be printed on your receipt.

My Transaction Summary



*******************************************

Transaction #14
Account Number Ending in:            4180
Checking Withdrawal         $5,000.00

.........................................

JPMorgan Chase Bank, N.A.
Park Place, Branch 202012
1-800-935-9935
Member FDIC, Equal Housing Lender
Please keep your receipt
06/23/2017 11:52

Business Date 06/23/2017
Session #9 .

Thank you - Jocelyn
.Cashbox #04

CHASE

CHASE 

Deposit cash or checks at a
Chase DepositFriendly(SM) ATM.
An image of your check can
be printed on your receipt.

My Transaction Summary

**************************************
Transaction #65
Account Number Ending In:          4180
Checking Withdrawal          $15,000.00

Available Balance            $1,817.36
Present Balance              $1,817.36
..................................
JPMorgan Chase Bank, N.A.
Culver and Deerfield, Branch 130753
1-800-935-9935
Member FDIC, Equal Housing Lender
Please keep your receipt
08/09/2017 12:24

Business Date 08/09/2017
Session #41

Thank you - Ella
Cashbox #06

CHASE

Wells Fargo Bank
Transaction Receipt

Store #0000983 2                 Deposit

                            XXXXXX1495
Account Number
CHK 00114                    $15,000.00
Cash In
  Loose Currency
  $100                      $15,000.00
      Sub total            $15,000.00
Total Deposit               $15,000.00

Deposit Availability
The full amount of your deposit is
included in your available balance.

Transaction # 038 0047
12:50PM   08/09/17
Deposit Credit Date: 08/09/17

Thank you for your business.
Enjoy the convenience of
scheduling appointments online at
wellsfargo.com/appointments

Thank you, YOHANNA

USAO_00000091

Deposit cash or checks at a
Chase DepositFriendly (SM) ATM.
An image of your check can
be printed on your receipt.

My Transaction Summary
********************************************

Transaction #73
Account Number Ending In:          2161
Savings Withdrawal              $3,000.00

Available Balance               $1,322.41
Present Balance                 $1,322.41

Transaction #74
Account Number Ending In:          4180
Checking Withdrawal             $3,000.00

Available Balance                 $544.31
Present Balance                   $544.31

JPMorgan Chase Bank, N.A.
Park Place, Branch 202012
1-800-935-9935
Member FDIC, Equal Housing Lender
Please keep your receipt
07/25/2017 18:00

Business Date 07/25/2017
Session #29

Thank you - Akoni
Cashbox #05








---

Thank you - Johnathan Turner
Session #180
Business Date 08/07/2017
Please keep your receipt
08/07/2017 15:26
Member FDIC, Equal Housing Lender
1-800-935-9935
Harvard and Main, Branch 123833
JPMorgan Chase Bank, N.A.

Funds Transfer.
$1,300.00
To Checking Account Ending In:     5152
From Savings Account Ending In:    2161
Transaction #383

My Transaction Summary
********************************************

An image of your check can
be printed on your receipt.
Chase DepositFriendly(SM) ATM.
Deposit cash or checks at a

Cashbox #06



---

Deposit cash or checks at a
Chase DepositFriendly (SM) ATM.
An image of your check can
be printed on your receipt.

My Transaction Summary
********************************************

Transaction #48
Account Number Ending In:          2161
Savings Withdrawal              $5,000.00

Available Balance              $12,837.19
Present Balance               $12,837.19

JPMorgan Chase Bank, N.A.
Park Place, Branch 202012
1-800-935-9935
Member FDIC, Equal Housing Lender
Please keep your receipt
07/08/2017 14:20

Business Date 07/10/2017
Session #21

Thank you - Akoni

# EXHIBIT 2

Account number:   **1225624921**   ▪   August 1, 2017 - August 31, 2017   ▪   Page 2 of 5


WELLS FARGO

---

### Activity summary

| | |
|---|---:|
| Beginning balance on 8/1 | -$5,000.46 |
| Deposits/Credits | 121,400.00 |
| Withdrawals/Debits | - 57,723.09 |
| **Ending balance on 8/31** | **$58,676.45** |
| Average ledger balance this period | $52,777.02 |

Account number:   **1225624921**

**INDVLS**

*California account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 121042882

For Wire Transfers use
Routing Number (RTN): 121000248

### Overdraft Protection

Your account is linked to the following for Overdraft Protection:

▪   Savings - 000006268381107

---

### Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---:|---:|---:|
| 8/9 | | Online Transfer From Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03Ncb2Kg on 08/09/17 | 5,500.00 | | |
| 8/9 | | Online Transfer From Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03Nckfpp on 08/09/17 | 6,000.00 | | |
| 8/9 | | Purchase authorized on 08/09 Best Buy #109 Los Angeles CA P0000000674953336 Card 3561 | | 1,000.00 | 5,499.54 |
| 8/10 | | WT Seq#87042 Td Ameritrade Clearing /Org=Mishel Anik Galego IRA Td Ameritr Srf# Ec17081039804654 Trn#170810087042 Rfb# 15018431 | 100,000.00 | | |
| 8/10 | | eDeposit IN Branch/Store 08/10/17 02:54:31 Pm 4590 Macarthur Blvd Newport Beach CA | 9,900.00 | | |
| 8/10 | | Wire Trans Svc Charge - Sequence: 170810087042 Srf# Ec17081039804654 Trn#170810087042 Rfb# 15018431 | | 15.00 | |
| 8/10 | | Online Transfer to Indvls Business Market Rate Savings xxxxxx1107 Ref #Ib03Nf87Xp on 08/10/17 | | 406.00 | |
| 8/10 | | Purchase authorized on 08/10 Foolaction 57238 Los Angeles CA P00467222635029734 Card 3561 | | 589.95 | |
| 8/10 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03Nflh94 on 08/10/17 | | 3,000.00 | |
| 8/10 | | Withdrawal Made IN A Branch/Store | | 5,000.00 | 106,388.59 |
| 8/11 | | Recurring Payment authorized on 08/10 Experian *Credi 866-3690415 CA S587222627451645 Card 3561 | | 49.98 | |
| 8/11 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03Nkbwyn on 08/11/17 | | 2,500.00 | 103,838.61 |
| 8/14 | | Recurring Payment authorized on 08/11 Netflix.Com Netflix.Com CA S587223592143495 Card 3561 | | 11.99 | |
| 8/14 | | Transfer to Berumen Maria on 08/13 Ref #Rp03NM98P5 | | 400.00 | 103,426.62 |
| 8/15 | | Purchase authorized on 08/13 Lawdepot.Com 877-5 Edmonton Can S302226135576500 Card 3561 | | 33.00 | |
| 8/15 | | Purchase authorized on 08/15 Christian Louboutin Los Angeles CA P00000000145579584 Card 3561 | | 1,365.63 | |
| 8/15 | | Cash eWithdrawal in Branch/Store 08/15/2017 2:06 Pm 8571 Santa Monica Blvd West Hollywood CA 3561 | | 2,500.00 | |
| 8/15 | | Achma Visb Bill Pymnt 170814 6762373 Indvls Inc | | 287.04 | 99,240.95 |
| 8/16 | | Purchase authorized on 08/14 Vagabond Inns Costa Mesa CA S587226527783487 Card 3561 | | 111.32 | |
| 8/16 | | Withdrawal Made IN A Branch/Store | | 8,500.00 | 90,629.63 |
| 8/17 | | Withdrawal Made IN A Branch/Store | | 20,000.00 | 70,629.63 |
| 8/18 | | Purchase authorized on 08/17 Chevron 0090454 Los Angeles CA S307229591091976 Card 3561 | | 18.20 | 70,611.43 |

Account number:  **1225624921**  ▪  August 1, 2017 - August 31, 2017  ▪  Page 3 of 5



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|--------------|-------------|-------------------|---------------------|----------------------|
| 8/21 | | Purchase authorized on 08/20 T-Mobile #9779 Los Angeles CA S587232694218398 Card 3561 | | 31.33 | |
| 8/21 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03P8Jrw5 on 08/20/17 | | 60.00 | |
| 8/21 | | Purchase authorized on 08/21 Tiffany & CO #004 Beverly Hills CA P00000000039414858 Card 3561 | | 2,676.63 | |
| 8/21 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03Pbqpyr on 08/21/17 | | 3,000.00 | 64,843.47 |
| 8/22 | | Purchase authorized on 08/20 Qwench Q-007 Los Angeles CA S467232695732376 Card 3561 | | 17.30 | |
| 8/22 | | Purchase authorized on 08/20 The Boiling Crab Woodland Hill CA S587233084656833 Card 3561 | | 107.35 | |
| 8/22 | | Purchase authorized on 08/21 Blu Jam Cafe Mulho Woodland Hill CA 3307233640271424 Card 3561 | | 64.45 | 64,654.37 |
| 8/23 | | Purchase authorized on 08/21 Jamba Juice 1513 Q Woodland Hill CA S387233791401171 Card 3561 | | 14.58 | 64,639.79 |
| 8/24 | | Purchase authorized on 08/23 Zara USA 6493 Los Angeles CA S467235672732160 Card 3561 | | 305.25 | |
| 8/24 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03Pht4QM on 08/24/17 | | 1,000.00 | |
| 8/24 | | Purchase authorized on 08/24 CA Dmv Los Angeles Fo 502 Los Angeles CA P00467237006275731 Card 3561 | | 1,437.00 | 61,897.54 |
| 8/28 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03Ppf94C on 08/26/17 | | 97.00 | |
| 8/28 | | Purchase authorized on 08/26 Southwes 526875 800-435-9792 TX S387238745058701 Card 3561 | | 251.98 | |
| 8/28 | | Purchase authorized on 08/28 Evi*The Palms CA Las Vegas NV P00587240584891064 Card 3561 | | 2,602.95 | 58,945.61 |
| 8/29 | | Harland Clarke Check/Acc. 082817 00133407575482 Indvls | | 35.00 | |
| 8/29 | | Recurring Payment authorized on 08/28 Experian *Credi 866-3690415 CA S467240422037881 Card 3561 | | 24.99 | 58,885.62 |
| 8/30 | | Purchase authorized on 08/28 Jetblue 279218 Salt Lake Cty UT S587240462552690 Card 3561 | | 201.97 | 58,683.65 |
| 8/31 | | Cash Deposited Fee | | 7.20 | 58,676.45 |
| **Ending balance on 8/31** | | | | | **58,676.45** |
| **Totals** | | | **$121,400.00** | **$57,723.09** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, please see the Wells Fargo Fee and Information Schedule and Account Agreement applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq to find answers to common questions about the monthly service fee on your account.

| Fee period 08/01/2017 - 08/31/2017 | Standard monthly service fee $14.00 | You paid $0.00 |
|------------------------------------|-------------------------------------|----------------|
| **How to avoid the monthly service fee** | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| · Average ledger balance | $7,500.00 | $52,777.00 ☑ |
| · Qualifying transaction from a linked Wells Fargo Business Payroll Services account | 1 | 0 ☐ |
| · Qualifying transaction from a linked Wells Fargo Merchant Services account | 1 | 0 ☐ |
| · Total number of posted Wells Fargo Debit Card purchases and/or payments | 10 | 20 ☑ |
| - Enrollment in a linked Direct Pay service through Wells Fargo Business Online | 1 | 0 ☐ |
| · Combined balances in linked accounts, which may include | $10,000.00 | ☑ |
|   - Average ledger balances in business checking, savings, and time accounts | | |
|   - Most recent statement balance in eligible Wells Fargo business credit cards and lines of credit, and combined average daily balances from the previous month in eligible Wells Fargo business and commercial loans and lines of credit | | |

# EXHIBIT 3

# Wells Fargo Business Choice Checking

Account number:   1225624921   ■   September 1, 2017 - September 30, 2017   ■   Page 1 of 6



INDVLS
24311 SYLVAN GLEN RD
CALABASAS CA 91302-2362

### Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS**   (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:*   Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR  97228-6995

---

## Your Business and Wells Fargo

Cash flow is a key indicator of the financial health of your business. Find tips and strategies for effective cash flow management at wellsfargoworks.com.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s)  Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ✓ |
| Online Statements | ✓ |
| Business Bill Pay | ✓ |
| Business Spending Report | ✓ |
| Overdraft Protection | ✓ |

## Activity summary

| | |
|---|---|
| Beginning balance on 9/1 | $58,676.45 |
| Deposits/Credits | 210,000.26 |
| Withdrawals/Debits | - 89,153.03 |
| **Ending balance on 9/30** | **$179,523.68** |
| Average ledger balance this period | $60,425.30 |

Account number:   **1225624921**

**INDVLS**

*California account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN):  121042882

For Wire Transfers use
Routing Number (RTN):  121000248

### Overdraft Protection

Your account is linked to the following for Overdraft Protection:
■   Savings -  000006268381107

Account number:  **1225624921**   ▪  September 1, 2017 - September 30, 2017   ▪   Page 2 of 6



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 9/1 | | Td Ameritrade ACH Micro AZ9Ptqcewe Campbell Ze'Shawn | 0.12 | | |
| 9/1 | | Td Ameritrade ACH Micro AZ9Ptqcewe Campbell Ze'Shawn | 0.14 | | |
| 9/1 | | Transfer to Sou Joamna on 09/01 Ref #Rp03Q8Vswc | | 2,500.00 | |
| 9/1 | | ATM Withdrawal authorized on 09/01 717 Olympic Blvd. Los Angeles CA 0007139 ATM ID 0305E Card 3561 | | 300.00 | |
| 9/1 | | Coinbase.Com/Btc 8003435845 170831 Kjynpme7 Zeshawn S Campbell | | 1,999.35 | |
| 9/1 | | Td Ameritrade CI Sec Tr 170901 489951165074149 Ze'Shawn Campbell | | 5,000.00 | 48,877.36 |
| 9/5 | | Purchase authorized on 09/01 Shell Oil 57444585 Calabasas CA S467244790960684 Card 3561 | | 61.44 | |
| 9/5 | | Purchase authorized on 09/01 Yard House 8320008 Los Angeles CA S587245217213368 Card 3561 | | 47.09 | |
| 9/5 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03Qd4By6 on 09/02/17 | | 225.00 | |
| 9/5 | | Purchase authorized on 09/03 Apl*Apple Online S 800-676-2775 CA S467245557486169 Card 3561 | | 379.00 | |
| 9/5 | | Transfer to Campbell Erio on 09/02 Ref #Rp03Qf6Lf2 | | 1,333.00 | |
| 9/5 | | Purchase authorized on 09/05 Nike The Grove 246 Los Angeles CA S307247799336820 Card 3561 | | 365.97 | |
| 9/5 | | Td Ameritrade ACH Recapt AZ9Ptqcewf Campbell Ze'Shawn | | 0.26 | |
| 9/5 | 1001 | Check | | 2,208.50 | 44,257.10 |
| 9/7 | | State Farm Ro 08 Cpc-Client 23 S 1262912923 Campbell, Ze'Shawn | | 856.62 | |
| 9/7 | 1003 | Check | | 389.00 | 43,011.48 |
| 9/11 | | Purchase authorized on 09/07 Ic Los Angeles Dow Los Angeles CA S467251142838337 Card 3561 | | 97.02 | |
| 9/11 | | Purchase authorized on 09/09 Sprint *Wireless 800-639-6111 KS S587251654979837 Card 3561 | | 169.88 | |
| 9/11 | | Transfer to Ducroe Aja on 09/08 Ref #Rp03Qyjnhl | | 2,000.00 | |
| 9/11 | | Purchase authorized on 09/08 Kabuki Restaurant Huntingln Bch CA S307252222653353 Card 3561 | | 110.72 | |
| 9/11 | 1004 | Check | | 663.00 | 39,970.86 |
| 9/12 | | Online Transfer From Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03R6Mtr9 on 09/12/17 | 3,000.00 | | |
| 9/12 | | Purchase authorized on 09/11 Netflix.Com Netflix.Com CA S587254473280026 Card 3561 | | 11.99 | |
| 9/12 | | Purchase authorized on 09/12 Evi*The Palms CA Las Vegas NV P00587255274266043 Card 3561 | | 2,082.95 | |
| 9/12 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03R64Bqq on 09/12/17 | | 5,000.00 | |
| 9/12 | | Non-WF ATM Withdrawal authorized on 09/12 4321 W Flamingo Rd Las Vegas NV 00467255408202400 ATM ID Nvtpcx02 Card 3561 | | 264.99 | |
| 9/12 | | Non-Wells Fargo ATM Transaction Fee | | 2.50 | |
| 9/12 | | Withdrawal Made In A Branch/Store | | 15,000.00 | 20,608.43 |
| 9/13 | | Purchase authorized on 09/11 Starbucks Store 05 Burbank CA S387254801088481 Card 3561 | | 6.50 | |
| 9/13 | | Purchase authorized on 09/12 Starbucks Store 17 Los Angeles CA S387255145046009 Card 3561 | | 6.50 | 20,595.43 |
| 9/14 | | Purchase authorized on 09/11 Gyu-Kaku Burbank Burbank CA S467254861107082 Card 3561 | | 40.32 | |
| 9/14 | | Purchase authorized on 09/14 Lawdepot.Com 87750 866-608-1020 CA S587257207569806 Card 3561 | | 33.00 | |
| 9/14 | | Purchase authorized on 09/14 Foolaction 57238 Los Angeles CA P00467257843545833 Card 3561 | | 327.75 | |
| 9/14 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03Rdllh5 on 09/14/17 | | 2,700.00 | 17,494.36 |
| 9/15 | | Purchase authorized on 09/14 Crystal Crni 800914 Compton CA P00467258084735794 Card 3561 | | 2,625.00 | 14,869.36 |

Account number: **1225624921**   ■   September 1, 2017 - September 30, 2017   ■   Page 3 of 6


FARGO

## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------|-------------|---------|---------|---------|
| 9/18 | | WT Fed#05212 Jpmorgan Chase Ban /Org=Mi██ A G████ Srf# 5710200261Es Trn#170918155939 Rfb# Dcd of 17/09/18 | 40,000.00 | | |
| 9/18 | | Wire Trans Svc Charge - Sequence: 170918155939 Srf# 5710200261Es Trn#170918155939 Rfb# Dcd of 17/09/18 | | 15.00 | |
| 9/18 | | Purchase authorized on 09/15 Postmates Fry Madn Httpspostmate CA S387256261065251 Card 3561 | | 41.39 | |
| 9/18 | | Purchase authorized on 09/14 Casita Taco AL Car Los Angeles CA S467258190249253 Card 3561 | | 10.70 | |
| 9/18 | | Purchase authorized on 09/15 House of Blues Ana Anaheim CA S587259206269876 Card 3561 | | 139.00 | |
| 9/18 | | Purchase authorized on 09/15 House of Blues Ana Anaheim CA S587259220311992 Card 3561 | | 45.00 | |
| 9/18 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03Rrn2Xyh on 09/15/17 | | 700.00 | |
| 9/18 | | Purchase authorized on 09/16 House of Blues Ana Anaheim CA S387259287757571 Card 3561 | | 419.00 | |
| 9/18 | | Withdrawal Made In A Branch/Store | | 3,000.00 | |
| 9/18 | | Purchase authorized on 09/16 Starbucks Store 17 Los Angeles CA S307259695826487 Card 3561 | | 8.55 | |
| 9/18 | | Purchase authorized on 09/16 The Boiling Crab Los Angeles CA S387259765172482 Card 3561 | | 76.56 | |
| 9/18 | | Purchase authorized on 09/17 Panini Kabob Grill Los Angeles CA S467260582607175 Card 3561 | | 59.35 | |
| 9/18 | | Purchase authorized on 09/17 Ralphs 4754 Commons Calabasas CA P00000000433248428 Card 3561 | | 83.51 | 50,269.30 |
| 9/19 | | Purchase authorized on 09/17 Living Spaces Panorama City CA S387260732449125 Card 3561 | | 1,316.54 | |
| 9/19 | | Purchase authorized on 09/17 Stonefire Grill th Westlake Vill CA S467260811870496 Card 3561 | | 40.39 | |
| 9/19 | | Purchase authorized on 09/18 Starbucks Store 05 Calabasas CA S307261084907161 Card 3561 | | 9.20 | |
| 9/19 | | Online Transfer to Indvle Business Market Rate Savings xxxxxx1107 Ref #Ib03Rvz2Dk on 09/19/17 | | 3,000.00 | |
| 9/19 | | ATT Payment 091617 293826004Myw9E Zeshawn Campbell | | 84.00 | 45,819.17 |
| 9/20 | | WT Seq#62487 Td Ameritrade Clearing /Org=Mi██h A██ G████ Srf# Ec17092027630025 Trn#170920062487 Rfb# 15150831 | 8,000.00 | | |
| 9/20 | | Wire Trans Svc Charge - Sequence: 170920062487 Srf# Ec17092027630025 Trn#170920062487 Rfb# 15150831 | | 15.00 | |
| 9/20 | | Purchase authorized on 09/20 Best Buy #130 Northridge CA P00000000731861297 Card 3561 | | 174.79 | |
| 9/20 | | Purchase authorized on 09/20 Best Buy #130 Northridge CA P00000000852183907 Card 3561 | | 3.98 | 53,625.40 |
| 9/21 | | Purchase authorized on 09/19 Magnolia HI FI 311 Los Angeles CA S467263035989169 Card 3561 | | 3,000.00 | |
| 9/21 | | ATM Withdrawal authorized on 09/21 Edinger & Beach Huntington Bc CA 0001264 ATM ID 0820J Card 3561 | | 40.00 | 50,585.40 |
| 9/22 | | Purchase authorized on 09/21 McDonald's F17114 Woodland Hill CA S387264461403398 Card 3561 | | 8.62 | 50,576.78 |
| 9/25 | | WT Fed#01489 Jpmorgan Chase Ban /Org=Mi██ A G████ Srf# 5004800268Es Trn#170925111153 Rfb# Dcd of 17/09/25 | 70,000.00 | | |
| 9/25 | | Wire Trans Svc Charge - Sequence: 170925111153 Srf# 5004800268Es Trn#170925111153 Rfb# Dcd of 17/09/25 | | 15.00 | |
| 9/25 | | Purchase authorized on 09/21 Fresh Brothers C Calabasas CA S307264740274675 Card 3561 | | 28.36 | |
| 9/25 | | Purchase authorized on 09/22 Magnolia HI FI 311 Los Angeles CA S587265767051071 Card 3561 | | 3,000.00 | |
| 9/25 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03S7S6M7 on 09/23/17 | | 2,000.00 | |
| 9/25 | | Purchase authorized on 09/23 Restoration Hardware 8 Long Beach CA P00000000084470776 Card 3561 | | 661.39 | |

Account number: **1225624921** ▪ September 1, 2017 - September 30, 2017 ▪ Page 4 of 6


WELLS FARGO

## Transaction history *(continued)*

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|------|------|------|------|------|
| 9/25 | | Purchase authorized on 09/23 Best Buy 00011197 Signal Hill CA P00000000687658435 Card 3561 | | 983.24 | |
| 9/25 | | ATM Withdrawal authorized on 09/25 892 North Tustin Avenu Orange CA 0001015 ATM ID 0843B Card 3561 | | 300.00 | |
| 9/25 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03Scwg8T on 09/25/17 | | 10,000.00 | 103,588.79 |
| 9/26 | | Purchase authorized on 09/25 The Argyle Hollywo Los Angeles CA S467268252650991 Card 3561 | | 1,365.63 | 102,223.16 |
| 9/27 | | WT Fed#05722 Jpmorgan Chase Ban /Org=M░░░░i A G░░░d Srf# 4567900270Es Trn#170927107106 Rtb# Dcd of 17/09/27 | 47,000.00 | | |
| 9/27 | | Wire Trans Svc Charge - Sequence: 170927107106 Srf# 4567900270Es Trn#170927107106 Rtb# Dcd of 17/09/27 | | 15.00 | |
| 9/27 | | Purchase authorized on 09/26 Uber US SEP26 Bk Help.Uber.Com CA 9307269512359147 Card 3561 | | 52.68 | |
| 9/27 | | Purchase authorized on 09/26 Apple Store #R189 Canoga Park CA S467270010697390 Card 3561 | | 195.56 | 148,959.92 |
| 9/28 | | Purchase authorized on 09/27 Vzwrlss*Ivr Vb 800-922-0204 FL S307269767607620 Card 3561 | | 1,096.25 | |
| 9/28 | | ATM Withdrawal authorized on 09/28 717 Olympic Blvd. Los Angeles CA 0001814 ATM ID 0305E Card 3561 | | 300.00 | 147,563.67 |
| 9/29 | | WT Fed#09736 Jpmorgan Chase Ban /Org=M░░░i A G░░░░d Srf# 5765100272Es Trn#170929156082 Rtb# Dcd of 17/09/29 | 36,000.00 | | |
| 9/29 | | Online Transfer From Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03Smnlgd on 09/28/17 | 6,000.00 | | |
| 9/29 | | Wire Trans Svc Charge - Sequence: 170929156082 Srf# 5765100272Es Trn#170929156082 Rtb# Dcd of 17/09/29 | | 15.00 | |
| 9/29 | | Recurring Payment authorized on 09/28 Experian *Credi 866-3690415 CA S307271424773486 Card 3561 | | 24.99 | |
| 9/29 | | Withdrawal Made In A Branch/Store | | 10,000.00 | 179,523.68 |
| **Ending balance on 9/30** | | | | | 179,523.68 |
| **Totals** | | | **$210,000.26** | **$89,153.03** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Summary of checks written   *(checks listed are also displayed in the preceding Transaction history)*

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|------|------|------|------|------|------|------|------|------|
| 1001 | 9/5 | 2,208.50 | 1003 * | 9/7 | 389.00 | 1004 | 9/11 | 663.00 |

*\* Gap in check sequence.*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 09/01/2017 - 09/30/2017 | Standard monthly service fee $14.00 | You paid $0.00 | |
|------|------|------|------|
| **How to avoid the monthly service fee** | Minimum required | This fee period | |
| Have any ONE of the following account requirements | | | |
| · Average ledger balance | $7,500.00 | $50,425.00 | ☑ |
| · Qualifying transaction from a linked Wells Fargo Business Payroll Services account | 1 | 0 | ☐ |
| · Qualifying transaction from a linked Wells Fargo Merchant Services account | 1 | 0 | ☐ |
| · Total number of posted Wells Fargo Debit Card purchases and/or payments | 10 | 40 | ☑ |
| - Enrollment in a linked Direct Pay service through Wells Fargo Business Online | 1 | 0 | ☐ |

# EXHIBIT 4



## CONFIRMATION OF FORGERY

I have never authorized transactions to be made on **Chase Credit Card** Account Number 4246315233681657, nor have I authorized anyone else.

Any transaction(s) occurring on or after <u>8/1/2017</u> is/are **unauthorized.**

**I understand that the card has been issued by Chase in my name, however, I did not: (1) receive the card, (2) use the card to make purchases or to take cash advances or for any other purposes, or (3) give the card or card number or the Personal Identification Number to anyone else.**

**I have never received any benefit directly or indirectly from the card or the use thereof.**

Signed: _____     Date: _____

To expedite processing, you may fax this Affirmation to 1-866-827-7034.

## SCHEDULE OF UNAUTHORIZED TRANSACTIONS:

| Date | Amount | Merchant/Bank | Address | Transaction Account # |
|------|--------|---------------|---------|----------------------|
| 8/8/2017 | $69.98 | YARD HOUSE 83000083014 | LONG BEACH CA | 4246315233681657 |
| 8/8/2017 | $10.30 | QWENCH Q-007 | LOS ANGELES CA | 4246315233681657 |
| 8/8/2017 | $6.00 | AQUARIUM PARKING GARAGE | LONG BEACH CA | 4246315233681657 |
| 8/9/2017 | $1,538.96 | BEST BUY MHT  00001099 | LOS ANGELES CA | 4246315233681657 |
| 8/9/2017 | $14.99 | ADOBE | 800-833-6687 CA | 4246315233681657 |
| 8/10/2017 | $42.16 | WALTER'S 2 GO | BEVERLY HILLS CA | 4246315233681657 |
| 8/10/2017 | $57.82 | KATSUYA DOWNTOWN LA LLC | LOS ANGELES CA | 4246315233681657 |
| 8/10/2017 | $25.00 | UNITED     0162602450361 | 800-932-2732 TX | 4246315233681657 |
| 8/10/2017 | $26.20 | QWENCH Q-007 | LOS ANGELES CA | 4246315233681657 |
| 8/11/2017 | $196.21 | SUNGLASS HUT 3776 | LOS ANGELES CA | 4246315233681657 |
| 8/13/2017 | $463.99 | IC LOS ANGELES DOWNTOWN | LOS ANGELES CA | 4246315233681657 |
| 8/15/2017 | $2,567.38 | CHRISTIAN LOUBOUTIN | LOS ANGELES CA | 4246315233681657 |
| 8/15/2017 | $73.20 | TRIPLE 8 RESTAURANT LLC | LOS ANGELES CA | 4246315233681657 |

USAO_00000086



| 8/17/2017 | $455.86 | FLETCHER JONES MOTOR CARS | NEWPORT BEACH CA | 4246315233681657 |
|---|---|---|---|---|
| 8/17/2017 | $385.65 | KATANA - WEST HOLLYWOOD | WEST HOLLYWOO CA | 4246315233681657 |
| 8/17/2017 | $100.00 | YAMATO ENCINO | ENCINO CA | 4246315233681657 |
| 8/17/2017 | $13.90 | STARBUCKS STORE 05487 | WOODLAND HILL CA | 4246315233681657 |
| 8/20/2017 | $50.00 | REGAL LA LIVE STADIUM 14 | LOS ANGELES CA | 4246315233681657 |
| 8/20/2017 | $12.77 | REGAL LA LIVE STADIUM 14 | LOS ANGELES CA | 4246315233681657 |
| 8/20/2017 | $144.21 | LULULEMON WESTFIELD | CANOGA PARK CA | 4246315233681657 |
| 8/20/2017 | $382.38 | ADIDAS 6556 | CANOGA PARK CA | 4246315233681657 |
| 8/21/2017 | $176.97 | HTN GARDEN INN CALABASAS | CALABASAS CA | 4246315233681657 |
| 8/21/2017 | $80.19 | SHELL OIL 57444403802 | TORRANCE CA | 4246315233681657 |
| 8/21/2017 | $38.22 | JOURNEYS KIDZ 057121 | CANOGA PARK CA | 4246315233681657 |
| 8/22/2017 | $94.57 | HOPDODDY BURGER BA | PLAYA VISTA CA | 4246315233681657 |
| 8/22/2017 | $878.99 | BEST BUY MHT  00001099 | LOS ANGELES CA | 4246315233681657 |
| 8/22/2017 | $28.66 | LA CAFE | LOS ANGELES CA | 4246315233681657 |
| 8/22/2017 | $66.81 | TRIPLE 8 RESTAURANT LLC | LOS ANGELES CA | 4246315233681657 |
| 8/24/2017 | $329.51 | HILTON WOODLAND HILLS | WOODLAND HLS CA | 4246315233681657 |
| 8/24/2017 | $101.75 | KATSUYA DOWNTOWN LA LLC | LOS ANGELES CA | 4246315233681657 |
| 8/25/2017 | $1.00 | Experian    *CreditReport | 866-3690415 CA | 4246315233681657 |
| 8/25/2017 | $7.30 | QWENCH Q-007 | LOS ANGELES CA | 4246315233681657 |
| 8/26/2017 | $2,834.50 | PALMS PLACE RESERVATIO | 7024953554 NV | 4246315233681657 |
| 8/27/2017 | $3,307.04 | PALMS PLACE FRONT DESK | LAS VEGAS NV | 4246315233681657 |
| 8/30/2017 | $242.58 | EQUINOX #702 | 8663326549 CA | 4246315233681657 |
| 8/30/2017 | $242.58 | EQUINOX #702 | 8663326549 CA | 4246315233681657 |
| 8/30/2017 | $434.40 | Nike S Coast Plz 303 | Costa Mesa CA | 4246315233681657 |
| 8/31/2017 | $7.90 | EQUINOX MOTO #712 | 866-332-6549 CA | 4246315233681657 |
| 8/31/2017 | $1,800.00 | SQ *HYPERCAR DEVELOPMENT | Cornelius NC | 4246315233681657 |
| 9/1/2017 | $486.00 | SQ *HYPERCAR DEVELOPMENT | Cornelius NC | 4246315233681657 |
| 9/1/2017 | $159.46 | JOEY WOODLAND HILLS | WOODLAND HILL CA | 4246315233681657 |
| 9/2/2017 | $778.88 | GREAT WOLF LODGE | GARDEN GROVE CA | 4246315233681657 |
| 9/2/2017 | $44.57 | PANINI KABOB GRILL - D | STRIPE.COM CA | 4246315233681657 |

USAO_00000088

# CHASE ○

| | | | | |
|---|---|---|---|---|
| 9/2/2017 | $219.79 | PALMS PLACE FRONT DESK | 7024953554 NV | 4246315233681657 |
| 9/2/2017 | $64.50 | AAA CA MEMBER PAYMENT | 800-765-0766 CA | 4246315233681657 |
| 9/3/2017 | $29.95 | Experian   *CreditReport | 866-3690415 CA | 4246315233681657 |
| 9/8/2017 | $44.30 | CHEVRON 0098982 | WOODLAND HILL CA | 4246315233681657 |
| 9/9/2017 | $14.99 | ADOBE *ACROPRO SUBS | 800-833-6687 CA | 4246315233681657 |
| 9/10/2017 | $188.53 | KATSUYA DOWNTOWN LA LLC | LOS ANGELES CA | 4246315233681657 |
| 9/11/2017 | $235.94 | SOUTHWES   5268763181149 | 800-435-9792 TX | 4246315233681657 |
| 9/11/2017 | $477.80 | TM *LOS ANGELES RAMS | 619-220-8497 CA | 4246315233681657 |
| 9/12/2017 | $9.40 | QWENCH Q-007 | LOS ANGELES CA | 4246315233681657 |
| 9/12/2017 | $60.26 | L'ASSIETTE STEAK FRITES | LOS ANGELES CA | 4246315233681657 |
| 9/13/2017 | $109.75 | RESTORATION HARDWARE | 844-252-0930 CA | 4246315233681657 |
| 9/13/2017 | $1,197.44 | T-MOBILE #2629 | LOS ANGELES CA | 4246315233681657 |
| 9/15/2017 | $317.88 | T-MOBILE #9779 | LOS ANGELES CA | 4246315233681657 |
| 9/15/2017 | $106.00 | STATE OF CALIF DMV INT SC | 800-7770133 CA | 4246315233681657 |
| 9/15/2017 | $84.41 | SHELL OIL 57444403604 | LOS ANGELES CA | 4246315233681657 |
| 9/16/2017 | $701.00 | HOUSE OF BLUES ANAHEIM | ANAHEIM CA | 4246315233681657 |
| 9/17/2017 | $8.99 | APL* ITUNES.COM/BILL | 866-712-7753 CA | 4246315233681657 |
| 9/17/2017 | $14.99 | APL* ITUNES.COM/BILL | 866-712-7753 CA | 4246315233681657 |
| 9/17/2017 | $9.99 | APL* ITUNES.COM/BILL | 866-712-7753 CA | 4246315233681657 |
| 9/17/2017 | $0.99 | APL* ITUNES.COM/BILL | 866-712-7753 CA | 4246315233681657 |
| 9/17/2017 | $4,787.77 | LUCKY STRIKE LOS ANGELES | LOS ANGELES CA | 4246315233681657 |
| 9/23/2017 | $235.00 | EQUINOX MOTO #702 | 8663326549 CA | 4246315233681657 |
| 9/23/2017 | $235.00 | EQUINOX MOTO #702 | 8663326549 CA | 4246315233681657 |
| 9/27/2017 | $19.99 | APL* ITUNES.COM/BILL | 866-712-7753 CA | 4246315233681657 |
| 9/28/2017 | $713.94 | SWA*EARLYBRD5268769281198 | 800-435-9792 TX | 4246315233681657 |
| 9/29/2017 | $727.59 | ENTERPRISE RENT-A-CAR | OXNARD CA | 4246315233681657 |
| 10/1/2017 | $148.20 | UNITED   0162367649289 | 800-932-2732 TX | 4246315233681657 |
| 10/1/2017 | $148.20 | UNITED   0162367649290 | 800-932-2732 TX | 4246315233681657 |

USAO_00000087



| 10/1/2017 | $148.20 | UNITED   62367649291 | 800-932-2732 TX | 4246315233681657 |
|---|---|---|---|---|
| 10/1/2017 | $148.20 | UNITED   0162367649292 | 800-932-2732 TX | 4246315233681657 |
| 10/1/2017 | $148.20 | UNITED   0162367649293 | 800-932-2732 TX | 4246315233681657 |
| 10/1/2017 | $352.14 | PAPPADEAUX SEAFOOD KIT | ARLINGTON TX | 4246315233681657 |
| 10/1/2017 | $32.98 | APL* ITUNES.COM/BILL | 866-712-7753 CA | 4246315233681657 |
| 10/3/2017 | $29.95 | Experian   *CreditReport | 866-3690415 CA | 4246315233681657 |
| 10/6/2017 | $3,000.00 | HIGH CLASS JEWELS | LOS ANGELES CA | 4246315233681657 |
| 10/7/2017 | $166.33 | LegalZoom.com | 888-3100151 CA | 4246315233681657 |
| 10/9/2017 | $14.99 | ADOBE *ACROPRO SUBS | 800-833-6687 CA | 4246315233681657 |
| 10/11/2017 | $5.99 | APL* ITUNES.COM/BILL | 866-712-7753 CA | 4246315233681657 |
| 10/11/2017 | $9.99 | APL* ITUNES.COM/BILL | 866-712-7753 CA | 4246315233681657 |
| 10/11/2017 | $14.00 | ENTERPRISE RENT-A-CAR | OXNARD CA | 4246315233681657 |
| 10/11/2017 | $148.33 | CHEESECAKE THE GROVE | LOS ANGELES CA | 4246315233681657 |
| 10/15/2017 | $338.21 | VIRGIN AMER 9842152104120 | SAN FRANCISCO CA | 4246315233681657 |
| 10/15/2017 | $338.21 | VIRGIN AMER 9842152104121 | SAN FRANCISCO CA | 4246315233681657 |
| 10/16/2017 | $0.99 | APL* ITUNES.COM/BILL | 866-712-7753 CA | 4246315233681657 |
| 10/16/2017 | $65.79 | SHELL OIL 57444403604 | LOS ANGELES CA | 4246315233681657 |
| 10/17/2017 | $2,208.68 | LIVING SPACES | PANORAMA CITY CA | 4246315233681657 |
| 10/18/2017 | $103.72 | MARMALADE CAFE | CALABASAS CA | 4246315233681657 |

USAO_00000089



-1 of 11-

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry    08/19/2019

████ ████(GE████), date of birth ████████, telephone numbers
████ and ████████ and resides at ████
████████, was interviewed at the Los Angeles Field Office of the
Federal Bureau of Investigation(FBI).  After being advised of the identity
of the interviewing agent and the nature of the interview, GE████ provided
the following information:

   G████ first met ZESHAWN CAMPBELL(CAMPBELL) at a restaurant in Orange
County she frequented called Phan 55. The restaurant was close to where she
lived. She went regularly and ate at the bar. A lot of singles hung out at
the restaurant. When CAMPBELL and C████ first met they did not date right
away. They were simply friends. CAMPBELL often came into the restaurant with
other male friends. When G████ and CAMPBELL saw each other they talked and
became friendly.

   Over Memorial Day weekend 2017 GELFAND went to Phan 55 to eat. CAMPBELL
and his friend, SAM UDONKUKU(UDONKUKU), who works at Mercedes Benz, came
into the restaurant. GE████ joined UDONKUKU and CAMPBELL at the restaurant.
GE████ and UDONKUKU were in the midst of a conversation when UDONKUKU
mentioned that the two men he was closest to liked GE████. UDONKUKU
revealed one of the admirers was CAMPBELL. GE████ suggested GE████ and
CAMPBELL go out together. At the time GE████ had a positive opinion of
CAMPBELL. CAMPBELL appeared to have his act together. They exchanged phone
numbers and began texting. CAMPBELL eventually asked her out. Their first
date was either a lunch or dinner date at a restaurant called Beachcomber.
It went well.

   Prior to going on the date GE████ had learned some personal details
about CAMPBELL through their conversations at Phan 55. CAMPBELL told GE████
he was adopted by a white family and he had an adopted brother. About a
month before their first date CAMPBELL told GE████ that he had inherited

---

Investigation on  08/09/2019  at  Los Angeles, California, United States (In Person)

File #  272B-LA-3131312                                    Date drafted  08/12/2019

by  HEATON RYAN

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FD-302a (Rev. 5-8-10)

Continuation of FD-302 of  (U)  M███████ Ge ████d 8-09-2019                          , On   08/09/2019  , Page   2 of 11

five or six McDonald's restaurants. He needed to find some buyers for the
McDonald's restaurants. His adopted brother was trying to push him out of
the restaurants. He asked her if she knew anyone interested in buying the
restaurants. She checked with a friend to see if they knew anyone that would
be interested. They did not.

G█████D then returned to recapping their first date where CAMPBELL
revealed more details about his personal life. The fact that he had been
adopted came up again. CAMPBELL's father was killed while CAMPBELL's mother
was pregnant with CAMPBELL. CAMPBELL's mother did not want to raise him, so
she put him in a dumpster. CAMPBELL was recovered and taken from his
mother's custody. As CAMPBELL grew up his adopted parents and biological
family kept in contact with each other. CAMPBELL's adopted family encouraged
CAMPBELL to spend time with his biological family. CAMPBELL frequently
visited his biological family. CAMPBELL showed a photo to GELFAND of one of
his visits with his biological family. CAMPBELL was dressed formally while
his family members were dressed casually. CAMPBELL said his biological
family members made fun of CAMPBELL because he was being raised by a white
family. CAMPBELL added that his biological Uncle molested him during visits
to his biological family. The molestation started when CAMPBELL was six
years old. When CAMPBELL was 13 or 14 years old he alerted family members,
but no one listened. CAMPBELL eventually suffered injuries from the
molestation by the Uncle. CAMPBELL's biological grandmother intervened, she
somehow got the adoption rescinded and took custody of CAMPBELL.

Close to the end of their first date a blonde guy came to the table in an
apron and brought a dessert. The man spoke to CAMPBELL and said he wanted to
thank CAMPBELL for helping out his relative, a brother or sister. GELFAND
did not listen real carefully, but she gathered the man was referring to a
medical situation and that CAMPBELL paid for a surgery.

The McDonald's restaurants CAMPBELL owned supported CAMPBELL financially.
He also told G█████D he owned a chain of gyms.

When G█████D and CAMPBELL first met CAMPBELL drove a Kia. He told her he
owned a BMW 7 series, but it was getting repaired. CAMPBELL also said he
owned a BMW 5 series, but his ex-wife, JOANNA SOU(JOANNA) drove it.

When G█████D and CAMPBELL met, CAMPBELL lived in an apartment in Newport

USAO_00000064

FD-302a (Rev. 5-8-10)

Continuation of FD-302 of  (U) M██████n G██████nd 8-09-2019                    , On  08/09/2019  , Page    3 of 11

Villas. He previously lived somewhere in Astoria.

G██████ and CAMPBELL stayed in touch and continued to date. They met at Phan 55 for their second date, but then went to another restaurant Bistingo where they had dinner. At the dinner CAMPBELL pointed to some spots on his neck area and revealed that he had been diagnosed with stage four Hodgkins lymphoma. CAMPBELL had been treated in the past for the same thing. He suffered severe side effects from chemotherapy and radiation. He did not know if that course of treatment would be prescribed again. He was considering natural treatments in Mexico or Texas. CAMPBELL then later in the date asked to move in together with G██████. G██████ declined.

G██████ and CAMPBELL went on a third date, again they went to a restaurant. While in the car either going to or leaving the restaurant CAMPBELL told G██████ that he had only a few months to live. He wanted to discuss his will with G██████. CAMPBELL wanted to make sure his family was taken care of, but also wanted a portion of his money to go to charity. CAMPBELL wanted G██████ to handle the charitable portion of his will. G██████ was skeptical that CAMPBELL was going to die. She told him that lymphoma seemed very treatable. But she ultimately agreed to assist him with setting up a foundation, she had some experience in that field. CAMPBELL then logged into a bank account on his phone. He showed GELFAND the balance on the account, it was over $1,000,000. CAMPBELL told GELFAND he wanted to use this account for the charity. CAMPBELL explained when his adopted father passed away the inheritance was handled in a very organized fashion. His adopted father's relatives all received envelopes telling each person what they inherited. No one fought over the assets. CAMPBELL wanted his assets to be handled in the same way.

CAMPBELL, after about a month or two of dating G██████ moved to Los Angeles. He wanted to be closer to his kids. G██████ and CAMPBELL still dated after he moved.

G██████ saw CAMPBELL's ex-wife at Phan 55 one time with CAMPBELL's daughters prior to G██████ and CAMPBELL dating. G██████ never met JOANNA. CAMPBELL has two daughters approximately six and four years old.

When CAMPBELL lived in Orange County he was treated by a doctor with Hoag Medical Group. Then when he moved to Los Angeles he was treated by Dr. Black

FD-302a (Rev. 5-8-10)

Continuation of FD-302 of (U) M██████n G██████  8-09-2019                      , On  08/09/2019 , Page  4 of 11

at Cedars-Sinai.

One day CAMPBELL called G██████ to tell her about some financial
difficulties he encountered. CAMPBELL had previously told G██████ he was in
the military, he worked as a rescue diver for the Navy Seals. CAMPBELL
maintained some kind of reserve status with the military, he explained it to
G██████ but she did not remember all the details. CAMPBELL also ran a
security business that worked with military. CAMPBELL's business provided
contractors to the government overseas. During the phone call CAMPBELL told
G██████ he was going to have trouble making payroll for his security
business. He asked G██████ initially for a few thousand dollars, but as they
continued to discuss it his request grew to $60,000. Initially G██████
declined to give him the money and suggested that he just shut the business
down. CAMPBELL explained he could not do that, if he did it would jeopardize
his relationship with his commanding officer in the reserve program. The
commanding officer did CAMPBELL a favor by keeping him in the "reserve
status" which allowed CAMPBELL to keep his health insurance. CAMPBELL
claimed if he shut his security business down it would somehow negatively
impact his commanding officer. G██████ decided to help and made multiple
deposits into CAMPBELL's bank account at Wells Fargo. The deposits totaled
approximately $60,000. Each deposit averaged between $10,000 and $15,000.
G██████ thought the money would be used to cover the payroll for CAMPBELL's
security business. CAMPBELL provided G██████ with a notarized document
signed by CAMPBELL stating he would repay the loan by February 2018.

G██████ and CAMPBELL continued to see each other. On July 13, 2017 they
got together for G██████'s birthday. CAMPBELL rented a hotel room at Surf &
Sand. He decorated it. They went out to eat at Selanne's restaurant.

After the birthday date CAMPBELL told G██████ he had been spending more
time in the hospital. He received a blood transfusion and on at least one
occasion fainted.

CAMPBELL then told G██████ in around August of 2017 he was experiencing
some additional financial difficulty. CAMPBELL's ex-wife, JOANNA, was trying
to take over the gyms he owned. JOANNA complained to CAMPBELL that CAMPBELL
was not running the business. She was trying to undermine his ownership.
G██████ told CAMPBELL to forget the gyms and start over. CAMPBELL gave
G██████ some explanation for why he could not do that. She did not recall

FD-302a (Rev. 5-8-10)

Continuation of FD-302 of  (U) M█████G ██████ i 8-09-2019                , On  08/09/2019  , Page  5 of 11

specifically all of the details, but she did remember CAMPBELL referenced
having money tied up in a house he wanted to buy. CAMPBELL asked G█████D for
$100,000 to make repairs and improvements to the gyms and to buy a high end
television and video camera. CAMPBELL promised to repay CAMPBELL as soon as
his house closed. G█████ wired CAMPBELL approximately $120,000 for the gym
expenses. G█████ accompanied CAMPBELL to Best Buy when he purchased some of
the electronics for the gyms. CAMPBELL spent between $17,000 and $20,000 at
Best Buy on the camera and television. G█████ estimated the television was
77" and cost around $15,000. G█████ reiterated to the agent she thought the
television was for the gym.

   CAMPBELL had previously told █████D that he worked in gyms as an
employee. First he started at Equinox and then when he moved to Texas where
he worked at the gym company he would later become part owner of. G█████
did not recall the name of the Texas gym company. While CAMPBELL worked at
the Texas gym company JOANNA was in a car accident. She also was pregnant at
the time. The car accident caused CAMPBELL's child to be born prematurely.
CAMPBELL sued a company that owned a vehicle involved in the accident. The
case settled for approximately $2,000,000. Some additional money was set
aside for CAMPBELL's child. CAMPBELL used the $500,000 to become part owner
of the gym company he worked at.

   G█████ provided information she knew about the house CAMPBELL wanted to
buy. While G█████ and CAMPBELL were dating CAMPBELL came across a Toll
Brothers development in Southern Irvine. CAMPBELL told █████ it was his
dream house. He planned to buy the house for his children and CAMPBELL and
JOANNA would rotate living in the house a week at a time. CAMPBELL showed
G█████ photos of the home. CAMPBELL told G█████ he either made a down-
payment of over $1,000,000 or owed someone $1,000,000 for the house.
CAMPBELL needed his money for the house or he would lose it.

   Some time after going to Best Buy with CAMPBELL, a friend of CAMPBELL's,
MICHAEL last name unknown (LNU), contacted G█████ND. G█████D did not recall
MICHAEL's last name, but had his phone number, ███████ , a nickname
MICHAEL went by "Logic Ameen", and his Instagram handle,
██████████ . MICHAEL told GELFAND that CAMPBELL was in
the hospital. One of the managers from the gym chain was in town, KEITH
DYKES(DYKES). DYKES was helping CAMPBELL manage a situation with the gyms.
MICHAEL said JOANNA was trying to talk CAMPBELL into something and MICHAEL



wanted G██████D to talk some sense in to CAMPBELL because JOANNA did not have CAMPBELL's best interest. G██████ tried to reach CAMPBELL, but had difficulty. Finally she reached him. CAMPBELL said he was in the hospital. He had suffered a dizzy spell. DYKES was in the hospital with him. CAMPBELL initially said everything was great, but then went on to explain that JOANNA was in cahoots with CAMPBELL's brother to take over ownership of CAMPBELL's McDonald's restaurants. CAMPBELL's brother planned to use his position to kick CAMPBELL out. CAMPBELL asked G██████ for $200,000. CAMPBELL told her he could buy the McDonald's restaurants and own them fully. CAMPBELL had previously learned that G██████ had control over her father's assets. He knew G████D's father had a significant amount of money saved. G██████D did not have the disposable cash to lend to G█████D, so CAMPBELL pressured G██████) to lend CAMPBELL her father's money. CAMPBELL promised to repay the money within a week. GE█████ ultimately agreed to lend him the money. She attempted to wire him the money. At first the wire did not go through, but eventually it did.

  G██████ explained that around the time CAMPBELL would solicit money there always some simultaneous personal trauma going on along with CAMPBELL's financial difficulties. In the past CAMPBELL told GE██████ he tried to kill himself via drowning and shooting himself. He went through periods where he could not go on. G██████ felt these stories affected her.

  G████████eventually learned from CAMPBELL that despite the money she sent him he was not able to secure the McDonald's restaurants. CAMPBELL said McDonald's put him on a five year probation and they were holding the money. G██████estimated she learned about the failure to secure the McDonald's around October 2017. Around this time G██████ began feeling very ill for several weeks consecutively. GE██████ started to feel better, but then suffered a miscarriage. Prior to the miscarriage G██████ did not know she was pregnant. GE██████had not been dating anyone else, the child would have been CAMPBELL's. GE█████ told CAMPBELL about her illness and then ultimately the miscarriage when it occurred. CAMPBELL revealed that he had been trying to get GE█████ pregnant. G██████ was upset about this revelation, she had not planned on getting pregnant. G██████ felt her life had become a mess.

  CAMPBELL then contacted G████████, he revealed doctors had given him two weeks to live. He said he needed money for treatments. CAMPBELL owed Cedars Sinai $14,000, CAMPBELL claimed if he did not pay them the money they would

FD-302a (Rev. 5-8-10)

Continuation of FD-302 of  (U) M████ Ge█████ 8-09-2019                    , On  08/09/2019  , Page  7 of 11

not treat him. Then CAMPBELL's friend MICHAEL called GE████ asking her to
give the money to CAMPBELL. GE████ knew somebody at Cedars Sinai, she
contacted that person to get clarification, the Cedars representative
explained they could look into the issue if the patient provided their
account number. G██████ asked CAMPBELL for his account number, but he
declined to provide it to G██ ██D. G██ ██D did not give him the money.
CAMPBELL then asked for permission to drive G██ ██D's car from Los Angeles
to Atlanta to visit an Aunt whom he thought would help him with the
treatment.

    GE████ said her interactions with CAMPBELL had caused her to freak out.
She contacted a friend and asked her what to do. The friend knew a private
investigator(PI). G██████ hired the PI. The PI discovered that CAMPBELL was
essentially full of crap. The PI told GE████ that CAMPBELL was bad news, do
not let CAMPBELL take the car to Atlanta. GE████ called CAMPBELL and
instructed him not to drive the car anywhere. GE████ clarified for the
agent that she had been letting CAMPBELL use her car. CAMPBELL told GE████
that by not letting him drive the car to Atlanta she was going to kill him.
GE████ contacted a local law enforcement agency to report her interactions
with CAMPBELL. She spoke to a detective, who declined to pursue a case. The
detective was aware of CAMPBELL from a previous complaint received at the
police office, but the detective thought G████D's case was more a civil
dispute.

    GE████ knew that CAMPBELL started a business called INDVLS. CAMPBELL had
a credit card associated with the business. CAMPBELL told GE████ he added
her to his INDVLS credit card so she can use it. GE████ said she later
learned that her information was used to open up the credit card. The card
did not show up on GE████'s credit report. She believed that was because it
was in the name of CAMPBELL's business, but based on discussions she had
with representatives at the credit card company she believed the card was
opened in her name. GE████ called the credit card company and told them to
freeze the card. GE████ then got contacted by CAMPBELL. He said he could
not use the business credit card, he was trying to use it at pharmacy.
CAMPBELL explained he had been using the credit to keep himself afloat.
GE████ thought CAMPBELL had made payments on the card. The balance varied
between $7,000 to $27,000. He thanked her for not immediately canceling the
card, but asked her to reactivate it. CAMPBELL conferenced in a JP Morgan

FD-302a (Rev. 5-8-10)

Continuation of FD-302 of (U) M▮▮ ▮ G▮▮▮ 8-09-2019 , On 08/09/2019 , Page 8 of 11

Chase(Chase) representative to the phone call with G▮▮▮. Chase issued the credit card. G▮▮▮D told the Chase representative the card was opened fraudulently. G▮▮▮ estimated the conversations about **the** credit card took place around October of 2017. CAMPBELL complained that **because** of what **she** told Chase the cops would be after him and added that his cancer was **killing** him.

   G▮▮▮ clarified for the agent how CAMPBELL came to be **in** possession of G▮▮▮D's cars. G▮▮▮ leased two cars while dating CAMPBELL. She later discovered that CAMPBELL subleased these cars to third parties. The first car she leased was for CAMPBELL to use, a 7 series BMW. CAMPBELL told her he needed some wheels and could use the cars as a business write off. They went to a car dealership called Crevier BMW in Irvine. They shopped for the car and agreed on the car together. CAMPBELL while speaking to the car salesperson referred to G▮▮▮ as his fiance. When it came time to close the deal on the car CAMPBELL said he did not have a credit card, so G▮▮▮ covered the initial expenses for the car.

   The second car G▮▮▮ purchased was supposed to be for G▮▮▮. They went to a Mercedes dealership CAMPBELLS's friend, UDONKUKU, worked at. They leased a white S coupe with red interior. CAMPBELL again said he could use the car as a business write-off. He puts a ton of miles on cars because of his job. G▮▮▮ pushed back on the Mercedes at first, she thought the lease was too expensive. G▮▮▮D initially could not actually qualify for the lease, so the transaction did not get finalized for several days. But UDONKUKU continued to play with the numbers on the lease application and it ultimately got approved.

   G▮▮▮D paid $5,000 for the BMW and $14,000 for the Mercedes. CAMPBELL made some payments on the cars, but they are no longer current.

   G▮▮▮D at some point in 2018 asked CAMPBELL not to move the Mercedes Benz. On or around Februay 8, 2018 in Encino the car was involved in an accident. CAMPBELL told G▮▮▮ he was going to a doctor's appointment. CAMPBELL took the car to be fixed at a repair shop called Auto Stiegler. Insurance covered the repairs, but sent the money directly to CAMPBELL. CAMPBELL did not use the money to pay the repair shop. The repair shop told G▮▮▮ it would hold the car until they received payment, approximately $30,000. G▮▮▮could not even afford to make the monthly payments on the

FD-302a (Rev. 5-8-10)

car, so she just informed Mercedes Benz where they could find the car.

In September of 2018 G██████ learned the BMW had been involved in a car accident in June of 2018. G████ ❂ found out about the accident because of an unpaid fix-it ticket. CAMPBELL always gave a reason why he could not clear up the fix-it ticket. G██████ learned through her insurance company that CRYSTAL CARTER(CARTER)(PHONETIC) drove the car at the time of the accident. It appeared CAMPBELL had rented the car to her. She did not have enough insurance to cover the repairs of the car. The BMW was insured in G██████'s name with USAA. That car was "totaled" by her insurance company.

G██████ said her credit had been ruined by the cars. She also was in credit card debt. She currently is considering filing bankruptcy. CAMPBELL obtained three lines of credit in her name, a line of credit through Best Buy and two lines of credit through a jeweler. CAMPBELL told G██████ he wanted to get a nice watch from the jeweler. G██████ suspected CAMPBELL returned the jewelry to the jeweler for cash. She owed the jeweler about $3,600. G██████ spoke with an employee at the jeweler, TONY LNU. TONY said CAMPBELL used the line of credit to buy some jewelry.

G██████ and CAMPBELL's relationship deteriorated as she went further into debt. They fought a lot. G██████ asked for repayment. At one point CAMPBELL got a job at a leasing company, but said money was tight because his wages were being garnished.

CAMPBELL and G██████ stopped dating by the end of October 2017, but they stayed in contact. In March of 2018 CAMPBELL told G██████ he had gotten himself into trouble with some loan sharks. The loan sharks threatened G██████'s kids' lives and his own if he did not repay them. G██████ sent him $100,000 to pay the loan sharks. To come up with the money she sold her condo, withdrew money from her 401K and borrowed some money from her mother. Then later in March of 2018 CAMPBELL contacted G██████ and explained his partner in chain of gyms he owns had run into financially difficulty due to a gambling problem. The partner wanted to sell his ownership to CAMPBELL. G██████ gave him $50,000 to purchase the gyms.

CAMPBELL got a job as a building manager at a downtown building called Greystone or Greystar for a period of time. He earned about $70,000 a year. The only repayment she has received to date was $500 in January of 2018.

FD-302a (Rev. 5-8-10)

Continuation of FD-302 of (U) M██████ G██ ████ 8-09-2019 ___, On 08/09/2019 , Page 10 of 11

The last time she spoke to CAMPBELL was November 2, 2018. CAMPBELL told her some lie about the cars. CAMPBELL tried to call her about a month ago, around June 24th after J████ A QU████ A (QU█████) posted a video about CAMPBELL.

G████D hired an attorney to investigate CAMPBELL further. The attorney could not identify any evidence of ownership of any assets CAMPBELL told G████D about.

CAMPBELL often talked about different trusts he was a part of. He said his mother sold safes. CAMPBELL also carried around a lot of cash.

G████D understood that Dr. Black at Cedars-Sinai treated CAMPBELL.

G████D grew up as a figure skater, she obtained a degree in physical education. She spent most of her adult life coaching competitive figure skaters. More recently she pursued other careers. She tried working at an interior design company. She did that for a couple years but moved on. From May 2018 to March 2019 she worked for AIPAC as the area director. She felt she was pushed out of AIPAC.

She had the following phone numbers for CAMPBELL:
(949)339-0575, (323)499-8741, (818)703-3855, (818)699-4024, (818)324-2772

She had the following email addresses for CAMPBELL:

zeshawncampbell@gmail.com, ze.campbell@icloud.com and indvls@icloud.com

CAMPBELL founded INDVLS to be an umbrella company for his other ventures. He started a transport company called Arion Transport that operated under INDVLS.

G██████ learned much later on that CAMPBELL dated another woman named MARIA LNU while he dated G████D. She only met one of CAMPBELL's ex-girlfriends, DARION LNU. G████D met DARION before CAMPBELL and G████D started dating. At the time DARION had some doubts about CAMPBELL, but G██████ encouraged DARION to stay with CAMPBELL. G██████ now had some guilt about telling DARION to stay with CAMPBELL. She worried what CAMPBELL did to her.

In or around April 2017 G██████ took some medication that she felt made

USAO_00000072

FD-302a (Rev. 5-8-10)

████████████████████████

████████████

Continuation of FD-302 of ___(U) M██████ ███ █d 8-09-2019_____ , On _08/09/2019_ , Page __11 of 11__

her susceptible to CAMPBELL. The medication had side effects that made her dizzy, depressed and gave her suicidal thoughts.

At some point MICHAEL called █████ to see if she had some guns to sell. MICHAEL said he could sell guns via a straw sale.

G██ had some information about CAMPBELL's other friends:

Fresco buxx was a rapper.

ERIK KELLUM's instagram account handle is ████████ .

STEVEN WOOLDRIDGE's, who is from Long Beach, instagram account is ████████ .

JC LNU's instagram account is ████████ . JC is a barber and leased the BMW G██████'s name from CAMPBELL for a period of time.

# EXHIBIT 5

SchoolsFirst FCU



SCHOOLSFIRST
FEDERAL CREDIT UNION

P.O. Box 11547
Santa Ana, CA 92711
www.SchoolsFirstfcu.org

VOID AFTER SIX MONTHS
90-8200
3222

05 0001916041

01/15/19

Cashier's Check

PAY   ** THIRTY THOUSAND DOLLARS AND 00 CENTS **

$30,000.00

TO THE
ORDER OF   ZESHAWN CAMPBELL

President/CEO
Two signatures required over $5000

⑈0001916041⑈ ⑆3222820001⑉05⑈0000736000⑈



SchoolsFirst FCU
BOFD >322282001<
Date 1/15/2019 2:33 PM
Branch User: 005 u13541
333
DIN:695500003126606

SchoolsFirst FCU



THIS PAPER CONTAINS VISIBLE & INVISIBLE FIBERS WHICH FLUORESCE UNDER U.V. LIGHT. A TRUE CHAINLINK WATERMARK PATTERN CAN BE SEEN WHEN HELD TO LIGHT.

**SCHOOLSFIRST**
FEDERAL CREDIT UNION

P.O. Box 11547
Santa Ana, CA 92711
www.SchoolsFirstfcu.org

VOID AFTER SIX MONTHS
90-8200
3222

05 0001916821

01/16/19

Cashier's Check

PAY    ** THIRTY THOUSAND DOLLARS AND 00 CENTS **

$30,000.00

TO THE
ORDER OF    ZE'SHAWN CAMPBELL

President/CEO

Two signatures required over $5000

⑈000191682⑈⑉ ⑆322282001⑈⑉05⑈0000736000⑈



SchoolsFirst FCU
BOFD >322282001<
Date 1/17/2019 3:57 PM
Branch User: 044 u13623
333
DIN:695700002655273

YOUR ENDORSEMENT AND/OR NEGOTIATION OF THIS CHECK
CONSTITUTES ACCEPTANCE OF THIS AGREEMENT BELOW.

SchoolsFirst FCU

THIS PAPER CONTAINS VISIBLE AND INVISIBLE FIBERS WHICH FLUORESCE UNDER UV LIGHT. A TRUE CHAIN LINK WATERMARK PATTERN CAN BE SEEN WHEN HELD TO LIGHT

**SCHOOLSFIRST**
FEDERAL CREDIT UNION

P.O. Box 11547
Santa Ana, CA 92711
www.SchoolsFirstfcu.org

VOID AFTER SIX MONTHS

90-8200
3222

05 0001919427

01/24/19

Cashier's Check

PAY ** FIFTY THOUSAND DOLLARS AND 00 CENTS **

$50,000.00

TO THE ORDER OF ZE'SHAWN CAMPBELL

President/CEO

Two signatures required over $5000

RE: INVESTMENT PROPERTY

⑈0001919427⑈ ⑆322282001⑆05⑈0000736000⑈

---

YOUR ENDORSEMENT AND/OR NEGOTIATION OF THIS CHECK CONSTITUTES ACCEPTANCE OF THIS AGREEMENT BELOW.

-X-

DL# Y5663834
EXP 03-31-21
DOB 3-31-87
ISS 11-05-18

SchoolsFirst FCU
BOFD >322282001<
Date 1/25/2019 4:46 PM
Branch User: 014 u13600
333
DIN:696500005028703

*The security features listed below, as well as those not listed, exceed industry guidelines.*

THIS CHECK MUST HAVE THE FOLLOWING SECURITY FEATURES.
- MICROPRINTING (MP) IN ENDORSEMENT LINES (ABOVE) CAN BE EASILY READ WITH MAGNIFIER BUT APPEAR BLURRED IF PHOTOCOPIED OR SCANNED.
- CHAINLINK PATTERN TRUE WATERMARK CAN BE SEEN WHEN HELD TO LIGHT.
- BOTH SIDES OF THIS PAPER CONTAIN VISIBLE FIBERS PLUS INVISIBLE FIBERS WHICH FLUORESCE UNDER ULTRAVIOLET LIGHT
- PAPER CONTAINS CHEMICAL ALTERATION INDICATORS.
- PAPER HAS TONER GRIP TO PREVENT LASER IMAGE REMOVAL
- WARNING BAR ON CHECK ALERTS HANDLER THAT THE DOCUMENT CONTAINS SECURITY FEATURES.

* FEDERAL RESERVE BOARD OF GOVERNORS REG. CC





REDE Page 7 of 32

THIS PAPER CONTAINS VISIBLE & INVISIBLE FIBERS WHICH FLUORESCE UNDER U.V. LIGHT. A TRUE CHAINLINK WATERMARK PATTERN CAN BE SEEN WHEN HELD TO LIGHT

## SCHOOLS FIRST
FEDERAL CREDIT UNION

P.O. Box 11547
Santa Ana, CA 92711
www.SchoolsFirstfcu.org

VOID AFTER SIX MONTHS
90-8200
3222

05 0001929105

02/15/19

## Cashier's Check

PAY   ** FOUR THOUSAND NINE HUNDRED EIGHTY DOLLARS AND 00 CENTS **

$4,980.00

TO THE
ORDER OF   ZESHAWN CAMPBELL

President/CEO

Two signatures required over $5000

⑆0001929105⑆ ⑆322282004⑆05⑆0000736000⑆

2443522954

REQUEST 00007751311000000 4980.00
ROLL ECIA   20190222  000002443522958+
JOB ECIA  E  ACCT 0000050000736000
REQUESTOR U648880
22393541  09/24/2019 Research 22411470

Summons and Subpoenas Department
S4001-01F
Phoenix  AZ  85038

**SCHOOLS FIRST**
FEDERAL CREDIT UNION

P.O. Box 11547
Santa Ana, CA 92711
www.SchoolsFirstfcu.org

VOID AFTER SIX MONTHS
90-6200
3222

05 0001933363

02/27/19

## Cashier's Check

PAY  ** THIRTEEN THOUSAND DOLLARS AND 00 CENTS **

$13,000.00

TO THE
ORDER OF    ZE'SHAWN CAMPBELL

President/CEO

Two signatures required over $5000

⑈000⑉933363⑈ ⑈3222⑈200⑈⑈05⑈0000736000⑈



YOUR ENDORSEMENT AND/OR NEGOTIATION OF THIS CHECK
CONSTITUTES ACCEPTANCE OF THIS AGREEMENT BELOW.

The security features listed below, as well as
those not listed, exceed industry guidelines.

REQUEST 00007751311000000 13000.00
ROLL ECIA   20190301  000005940231949+
JOB ECIA  E  ACCT 0000050000736000
REQUESTOR U648880
22393541  09/24/2019 Research 22411470

Summons and Subpoenas Department
S4001-01F
Phoenix  AZ  85038

Primary account number: **5530010270**   ▪ April 13, 2019 - May 14, 2019   ▪ Page 3 of 8



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|------|-------|-------------|--------------------|--------------------------|---------------------|
| 4/24 | | NSF Return Item Fee for a Transaction Received on 04/23 $342.54 Lendmark Financl Trans Pmt 190422 78 032301018 501 Morales M | | 35.00 | |
| 4/24 | | WT Fed#01659 Schoolsfirst Fcu /Org=Kevin L Huang Srf# 20190424187300 Trn#190424167518 Rfb# | 10,000.00 | | |
| 4/24 | | Wire Trans Svc Charge - Sequence: 190424167518 Srf# 20190424187300 Trn#190424167518 Rfb# | | 15.00 | |
| 4/24 | | Zelle to Campbell Eric on 04/24 Ref #Rp0658Qcmh | | 2,500.00 | |
| 4/24 | | Withdrawal Made In A Branch/Store | | 6,000.00 | 1,513.25 |
| 4/25 | | Chase Credit Crd Rlwd Rdm 190424 Cbkdeu7Yeyokix4 Hussey Michele | 1,116.03 | | |
| 4/25 | | Purchase authorized on 04/24 Sqc*Cash App Eric 8774174551 CA S389115012536104 Card 0443 | | 734.00 | |
| 4/25 | | American Express ACH Pmt 190425 W7398 Zeshawn Campbell | | 768.45 | 1,126.83 |
| 4/26 | | Money Transfer authorized on 04/26 From Zeshawn Campbell CA S00309116640478261 Card 0443 | 738.75 | | |
| 4/26 | | Purchase authorized on 04/24 Yoshinoya Wishire Los Angeles CA S389114739936235 Card 0443 | | 6.89 | |
| 4/26 | | ATM Withdrawal authorized on 04/26 1625 Alameda St Compton CA 0009451 ATM ID 1164L Card 0443 | | 1,200.00 | |
| 4/26 | | Chase Credit Crd Epay 190425 4085240993 Michele Hussey | | 552.00 | |
| 4/26 | | Save As You Go Transfer Debit to Xxxxxxxxxx5015 | | 1.00 | 105.69 |
| 4/29 | | ATM Cash Deposit on 04/26 Tustin Tustin CA 0007455 ATM ID 5876E Card 0443 | 700.00 | | |
| 4/29 | | Purchase authorized on 04/26 Sqc*Cash App Sondr 8774174551 CA S589117241763301 Card 0443 | | 750.00 | 55.69 |
| 4/30 | | NSF Return Item Fee for a Transaction Received on 04/29 $5,000.00 Chase Credit Crd Epay 190426 4086769490 Nelson Dudang Mendoza | | 35.00 | |
| 4/30 | | NSF Return Item Fee for a Transaction Received on 04/29 $804.59 American Express ACH Pmt 190429 R9242 Zeshawn Campbell | | 35.00 | |
| 4/30 | | Overdraft Protection From 5754585015 | 3.00 | | -11.31 |
| 5/1 | | NSF Return Item Fee for a Transaction Received on 04/30 $551.33 The Residences A Web Pmts 043019 F90Z65 Zeshawn Campbell | | 35.00 | -46.31 |
| 5/2 | | NSF Return Item Fee for a Transaction Received on 05/01 $2,000.00 Chase Credit Crd Epay 190430 4091285706 Michele Hussey | | 35.00 | -81.31 |
| 5/3 | | NSF Return Item Fee for a Transaction Received on 05/02 $357.54 Lendmark Financl Trans Pmt 190430 78 032301018 501 Morales M | | 35.00 | -116.31 |
| 5/6 | | Zelle From Cruz Renatto on 05/04 Ref # Bac4F27F89D2 | 1,500.00 | | |
| 5/6 | | Money Transfer authorized on 05/04 From Zeshawn Campbell CA S00589124701126505 Card 0443 | 298.81 | | |
| 5/6 | | Zelle From Chontoya Chatmon on 05/05 Ref # Nav0Er9Cafum | 320.00 | | |
| 5/6 | | Non-WF ATM Withdrawal authorized on 05/04 4321 W Flamingo Rd Las Vegas NV 00389124704299301 ATM ID Nvtpcx09 Card 0443 | | 304.99 | |
| 5/6 | | Non-Wells Fargo ATM Transaction Fee | | 2.50 | |
| 5/6 | | Purchase authorized on 05/04 Evi*The Palms CA Las Vegas NV P0030912479151Q528 Card 0443 | | 1,354.95 | |
| 5/6 | | Zelle to Delacruz Rj on 05/05 Ref # Rp066Tffqw | | 1.00 | |
| 5/6 | | Non-WF ATM Withdrawal authorized on 05/06 3131 Las Vegas Blvd So Las Vegas NV 00589126309404698 ATM ID Nvwlvx22 Card 0443 | | 306.99 | |
| 5/6 | | Non-Wells Fargo ATM Transaction Fee | | 2.50 | |
| 5/6 | | Save As You Go Transfer Debit to Xxxxxxxxxx5015 | | 1.00 | 28.57 |
| 5/8 | | Purchase authorized on 05/06 Eddie World LLC Yermo CA S469126669662164 Card 0443 | | 3.76 | |
| 5/8 | | Purchase authorized on 05/06 Sqc*Cash App Nelso 8774174551 CA S389126736236741 Card 0443 | | 11.00 | |
| 5/8 | | Purchase authorized on 05/07 Reptile Island Placentia CA S309127797833133 Card 0443 | | 9.16 | |

SchoolsFirst FCU

**SCHOOLSFIRST**
FEDERAL CREDIT UNION

P.O. Box 11547
Santa Ana, CA 92711
www.SchoolsFirstfcu.org

VOID AFTER SIX MONTHS
90-8200
3222

05 0001967488

05/10/19

## Cashier's Check

PAY     ** THIRTEEN THOUSAND DOLLARS AND 00 CENTS **

TO THE     ZE'SHAWN CAMPBELL
ORDER OF

$13,000.00

President/CEO

Two signatures required over $5000

RE: CARE OF CEDARS-SANAI

⑈000 1967488⑈ ⑆3222 8 2001⑈05⑈0000 736000⑈

7949032573

YOUR ENDORSEMENT AND/OR NEGOTIATION OF THIS CHECK
CONSTITUTES ACCEPTANCE OF THIS AGREEMENT BELOW.

0063934
ffice AU #          11-24
                  121000)

nter:            KO EN H MBREY
haser:           KAREN HUMBREY
hitter:
haser Account:   u635499
ator I.D.:       Cash
ing Source:
TO THE ORDER OF     ***ZE' SHAWN  CAMPBELL ***

*Twenty thousand dollars and no cents***

Address:

FOR CD CEDAR SINA ZE' SHAWN 05-31-087
cu060008

LS FARGO BANK, N.A.
AU RD
PARK, CA 00820
HURST S CALL (480) 394-3122

**CASHIER'S CHECK**

SERIAL #:   6393402917
ACCOUNT#:   4861-511483

May 09, 2019

**\*\*$20,000.00\*\***

NOTICE TO PURCHASER—IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO BANK MAY IMPOSE A FEE AND
REQUIRE AN INDEMNITY AGREEMENT AND BOND.

VOID IF OVER US $  20,000.00

**NON-NEGOTIABLE**

**Purchaser Copy**

# Research Notice

### Research Code:

## DEPOSIT

## ELECTRONIC TRANSACTION - PAPER COPY NOT AVAILABLE.

REQUEST 00007751311000000 1972.98
ROLL ECIA   20190308  000000097018456
JOB ECIA  E  ACCT 1140005530010270
REQUESTOR U648880
22393541  09/24/2019 Research 22411470

Summons and Subpoenas Department
S4001-01F
Phoenix  AZ  85038

# EXHIBIT 6

## REAL ESTATE JOINT VENTURE AGREEMENT

This real estate joint venture is made and entered into this ___15___ day of ___JANUARY___ by and between

_____ZE'SHAWN CAMPBELL_____ referred to as the "First Party" and

_____K̶A̶S̶̶I̶ LOU H̶O̶̶̶̶Y̶_____ referred to as the "Second Party".

WHEREAS, The first party has investment capital available for contribution to the joint venture and

WHEREAS, The second party has a purchase contract to certain real estate located at 7620 FIGUEROA LOSANGELES CA, 90003 ____.

WHEREAS each of the parties desires to own one-half undivided interest in the subject property described below and the parties have agreed to limitations upon the right and power to transfer their undivided interests and have also agreed upon the payment of expenses, delegation of responsibility and the distribution of profits and/or losses incurred with reference to the property; and

WHEREAS, it is the desires of the parties to define and set out their relationship in writing and the circumstances under which they are operating, as of the date of this Agreement.

NOW THEREFORE, in consideration oft he mutual covenants herein after contained the parties agree as follows:

1. PRIOR AGREEMENT. It is the intention of the parties that this agreement replaces all written and or oral agreements previously existing between the parties.

2. FORMATION.  The parties hereby create a real estate joint venture agreement pursuant to the laws of the state of ___CALIFORINA___.  Said joint venture in any real estate purchased by the parties shall be defined solely by this agreement, regardless of the manner in which title to property may be taken.  This agreement is not intended to create a general joint venture between the parties.

3. PURPOSE. The purpose of the partner ship is to purchase the house located at ___7620 FIGUEROA___ for the purpose of repairing, renovating, and selling it as expeditiously possible and to carry on any and all such other activities as may be necessary to accomplish the above described purpose of the joint venture.

4. TERM The joint venture shall commence as of the date of this agreement and shall continue until terminated by mutual agreement of both parties or when monies are distributed per this agreement subsequent to closing the sale of the subject property.

5. CONTRIBUTION OF CAPITAL

(A) FIRST PARTY. The first party shall contribute all money needed to purchase, repair, maintain, advertise, market and incur any other expenses as well as any mortgage payments that become due during the period of ownership of the subject property as well as qualifying for any financing.

6.  LIABILITY OF THE PARTNERS. During the existence of the venture neither party shall be liable for any obligations of the other party created without the express approval of both parties. The parties shall share equally in any and all profits and losses of the venture.

7. REPRESENTATIONS AND WARRANTIES OF THE PARTIES. The parties represent and warrant that there are no suits, judgments or liens of any kind pending or file against him/her whether individually of in Conjunction with any person or entity in any jurisdiction whatsoever.

8. NATURE OF PERFORMANCE. During the existence of the joint venture the partners shall be solely responsible for performing the following duties:

(A) The first party shall contribute all monies needed to purchase, repair, maintain, advertise, market and any other expenses as well as mortgage payments that become due during the period of ownership of the subject property as well as qualifying for any necessary financing.

(B) The second party shall be solely responsible for the day to day management maintenance, renovation and marketing of the subject property for resale, thereby protecting the investment for both parties. The second party my make, at his sole option and expense, make alterations and improvements to the property as in her discretion are necessary and advisable.

9. JOINT VENTURE DECISIONS. All decisions, including but not limited to purchase of assets by the joint venture, any loan or other obligation to be undertaken by the joint venture, and sale of any asset of the joint venture, shall require the approval of all of the partners.

10. MARKETING PLAN. As soon as the property is totally renovated, the subject property shall be marketed for re-sale. The parties shall not retain the services of the broker to market the property but are willing to pay a commission if a real estate broker finds a qualified buyer.

11. CHECKING ACCOUNT. A checking account will be opened before closing with deposited to cover immediate needs which are reimbursing down payment costs to second party and to cover closing costs. Checks under $ _60,000_ only require one signature. Checks over $ _70,000_ need both signatures. The balance of the estimated costs will be deposited when contractor has submitted his repair estimate and approved by both parties. Both parties have agreed that the estimate for all costs is approximately $_____N/A_____.

12. DISTRIBUTIONS

    (A) Subsequent to the sale of the subject property, any proceeds will first be used to pay existing bank loan; second, to reimburse all cash advances by both parties; and lastly towards profits. Second party shall provide to first party a closing statement and an accounting of any and all expenses incurred and detailing how the new profit figure is obtained and distributed. After both parties have been repaid, as described above, then any remaining money will be distributed equally (50/50) between the parties. In no event shall second party be entitled to any profits until the subject property is sold to an arms-length third party.

13. DEATH OF PARTNER. Except as provided in this paragraph, each of the parties will not dispose (i.e., transfer, devise, convey, lease, mortgage or otherwise encumber his undivided interest) in the subject property without the written consent of the other party.

    (A) The death of the partner shall not act to terminate the joint venture. The state of the deceased partner shall continue to be considered a partner hereunder and shall share in any profits and/or losses.

14. PARTITION. Each of the parties irrevocably waives any and all right that he may have to maintain any action for partition with respect to his undivided interest in the property or to compel any sale of the property under any law now existing or hereafter enacted.

15. MORTGAGES. The first party shall, during the term of this agreement, be responsible for all monthly payments of mortgage, principal, interest, taxes and insurance. Such payments will be made by the second party from the joint venture checking account.

16. INSURANCE. The second party will see to it that the property is insured at all times for full market value. Any sums payable under said policy of insurance shall be sued exclusively to replace or repair the damage or theft for which said sums are paid unless the parties agree otherwise in writing.

17. VACANCY. The subject property shall remain vacant at all times during the term of this agreement unless otherwise agreed to by both parties in writing.

18. TITLE. Title shall be in the names of _____INDVLS INC_____ trust. Both parties will be 50/50 beneficiaries of that trust.

19. SECOND PARTY DUTIES AND RESPONSIBILITIES. Subject to the conditions and limitations but without limitation otherwise set forth herein and to the requirements of nay law or administrative enactment applicable here to, Second party shall:

    (A) Review and research references, credentials and licenses if applicable of any contractor or

repairmen which are chosen to perform repairs and renovations on the subject property.

(B) Negotiate and contract, on behalf of the first party, with contractor and repairmen to provide services and supervise said contractor and repairmen and their work at subject property. Funds are to be allocated to contractor on a percentage of completion as deemed necessary with any initial percentage payment exceeding  100    % to be approved by first party in writing.

(C) Purchase all materials, supplies and equipment as needed for the property maintenance, repair and renovations and operation of the subject property in a cost effective manner.

(D) Endeavor to keep monthly expenses at a minimum by pursing effective methods and procedures of cost reduction and control and advise first party on cast saving initiatives.

(E) Obtain all necessary lien releases from contractor and repairmen for payments made for work performed on the subject property.

(F) Routinely and regularly inspect the subject property and make recommendation to the first party regarding the management, repair and marketing of the subject property

(G) Communicate with first party on not less than a weekly basis on progress by faxing quicken statement of expenses outlaid and general progress report.

(H) Cause to be kept books of account in which shall be entered fully and accurately each and every transaction of the joint venture including bills paid and mortgage paid.

19. DEFAULT OF SECOND PARTY. In the event litigation results from or arises out of this agreement or the performance thereof due to the action, inaction or default of wither party, the prevailing party shall be entitled to costs and attorneys fees which may be deducted from the profits of the other.

20. INCOME TAXES. Each party shall be liable for any tax consequences created by the sale of the subject property based on his/her percentage split of the profits/losses distributed to him/her.

21. CONVEYANCE. Neither partner shall convey, sell, or transfer his interest in the joint venture unless agreed to in writing by the other partner.

22. MISCELLANEOUS PROVISIONS

(A) This agreement supersedes any and all prior agreement of the parties, whether oral or written.

(B) The parties agree to execute any and all documents necessary to carry out the terms and intent of this agreement.

(C)  Section headings contained in this agreement are included for convenience only and

form no part of the agreement between the parties.

(D) If any provisions of this agreement is or becomes invalid, illegal or unenforceable in any jurisdiction, such provision shall be deemed amended to conform to applicable laws so as to be valid and enforceable or if it cannot be so amended without and enforceable or, if it cannot be so amended without materially altering the intention of the parties, it shall be stricken and the reminder of this agreement shall remain in full force and effect.

(E) Unless specially disallowed by law, should litigation arise hereunder, service of process therefore may be obtained thru certified mail, return receipt requested, the parties hereto waiving any and all rights they may have to object to the method by which service was perfected.

(F) No waiver of any right under this agreement shall be deemed effective unless contained in a writing signed by the parties charged with such waiver, and no waiver of any right arising from any breach of any future such right or of any other right arising under this agreement.

(G) This instrument contains the entire agreement of the partners with respect to the subject matter hereof, and the terms and conditions thereof may not be further modified except by a writing signed by all the partners. This instrument shall under no circumstances be recorded.

(H) This agreement and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance wit the laws of the state of   CALIFORINA  . The parties herein waive trial by jury and agree to submit to the personal jurisdiction and venue of a court of subject matter located in the County of   LA  , state of   CALIFORINA  . In the event that litigation results from or arises out of this agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs and all other expenses whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

(I) This agreement shall be binding upon, and share inure to the benefit of the parties hereto, their respective heirs, and successors, as the case may be.

| | | |
|---|---|---|
| ZE'SHAWN CAMPBELL | ████-7541 | 01/15/2019 |
| FIRST PARTY | SOCIAL SECURITY | DATE |

| | | |
|---|---|---|
| KA███ LOU H██████ | ████6-5711 | 01/15/2019 |

prescribed by law as of the date first written above.

Signed this _16_ day of _January, 2019_, at _Santa, CA_.

_____

Borrower:
Indvls Inc

By: _Ze'Shawn Campbell_ _____
Ze'Shawn Campbell

Lender:
Karen Lou Horsley

By: _Karen Lou Horsley_ _____
Karen Lou Horsley

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California, County of _Orange_
Subscribed and sworn to (or affirmed) before me
on this _16_ day of _January_, 20 _19_,
by _Ze'Shawn Campbell_
proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.

Signature: _Ghanshyam Patel_
_Notary Public_

**GHANSHYAM PATEL**
COMM. #2128519
Notary Public - California
Orange County
My Comm. Expires Oct. 27, 2019

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California, County of _Orange_
Subscribed and sworn to (or affirmed) before me
on this _16_ day of _January_, 20 _19_,
by _Karen Lou Horsley_
proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.

Signature: _Ghanshyam Patel_
_Notary Public_

**GHANSHYAM PATEL**
COMM. #2128519
Notary Public - California
Orange County
My Comm. Expires Oct. 27, 2019

This is a RocketLawyer.com document.

# *LOAN AGREEMENT*

$30,000.00                                      Date: January 16, 2019

**$30,000.00 investment for a total return of $60,000.00**
**ROI is $30,000.00**

For value received, the undersigned Indvls Inc (the "Borrower"), at 4964 Roan Ct, Rancho Cucamonga, California 91737, promises to pay to the order of K▅▅▅L▅▅ H▅▅▅▅y (the "Lender"), at 10581 Asbury Ave, Stanton, California 90680 (or at such other place as the Lender may designate in writing), the sum of $30,000.00 plus $30,000.00 ROI from February 01, 2019, on the unpaid principal at the rate of N/A% per annum.

## I. TERMS OF REPAYMENT

### A. Payments

Unpaid principal after the Due Date shown below shall accrue interest at a rate of 18% annually until paid.

The unpaid principal and accrued interest shall be payable in full on May 15, 2019 (the "Due Date").

### B. Application of Payments

All payments on this Note shall be applied first in payment of accrued interest and any remainder in payment of principal.

### C. Acceleration of Debt

If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance and any accrued interest shall become due immediately at the option of the Lender.

## II. PREPAYMENT

The Borrower reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the installments of principal due under this note in the inverse order of their maturity and shall be accompanied by payment of accrued interest on the amount prepaid to the date of prepayment.

## III. COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

## IV. DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become due immediately, without demand or notice:

1) the failure of the Borrower to pay the principal and any accrued interest when due;

2) the liquidation, dissolution, incompetency or death of the Borrower;

3) the filing of bankruptcy proceedings involving the Borrower as a debtor;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower;

7) a misrepresentation by the Borrower to the Lender for the purpose of obtaining or extending credit; or

8) the sale of a material portion of the business or assets of the Borrower.

## V. SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## VI. MISCELLANEOUS

All payments of principal and interest on this Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

No delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note, or failure to accelerate the debt evidenced hereby by reason of default in the payment of a monthly installment or the acceptance of a past-due installment shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without

notice being given to Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This note may not be amended without the written approval of the holder.

## VII. GOVERNING LAW

This Note shall be construed in accordance with the laws of the State of California.

## VIII. SIGNATURES

This Note shall be signed by Ze'Shawn Campbell, on behalf of Indvls Inc and Ka▓ ▓ L▓▓ H▓▓▓▓ ▓▓

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** this Agreement has been executed and delivered in the manner prescribed by law as of the date first written above.

Signed this _____ day of _____, _____, at _____, _____ .

Borrower:
Indvls Inc

By:_____
Ze'Shawn Campbell

Lender:
Karga Lou Horsley

By:_____
Karen Lou Horsley

# EXHIBIT 7



JE___CA QU____MP
7_____DR
_____

1945

DATE 12/22/17    90/7162

PAY TO THE
ORDER OF   INDVLS INC.                    $ 6142.00

Sixtyone thousand four hundred fifty two dollars and 00/100 DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

ACCt #6823

MEMO Bitcoin investment from IRA

⑆322271627⑆    570979661⑈ 1945

ENDORSE HERE

CHECK HERE AFTER MOBILE OR REMOTE DEPOSIT

REQUEST 00007751297000000 61452.00
ROLL ECIA   20171222  000002048720689+
JOB ECIA  E  ACCT 0000000570979661
REQUESTOR U648880
22393541  09/24/2019 Research 22394966

Summons and Subpoenas Department
S4001-01F
Phoenix  AZ  85038

Wells Fargo Bank eDeposit Credit Copy

| | |
|---|---|
| Transaction Date and Time: | 12/22/2017 03:03 PM PST |
| Customer Name(s) | INDVLS |

| | | |
|---|---|---|
| Account Address | 24311 SYLVAN GLEN RD | |
| | CALABASAS, CA 913022362 | |
| Cash In: | $ 0.00 | |
| Less Cash: | $ 0.00 | |
| Total Checks Amount: | $ 61,452.00 | |
| Credit Serial Number | 3561503051 | |
| Deposit Total | | $61,452.00 |
| Credited account number | 1225624921 | |
| Customer or Teller initiated | T | |
| Customer confirmed on Pin Pad | Y | |
| CB, AU, Sequence Num | 01 0065859 0072 | |

Wells Fargo Bank, N.A.
Electronically Generated Image

2048720691

Electronically generated image

REQUEST 00007751297000000 61452.00
ROLL ECIA  20171222  000002048720691+
JOB ECIA  E  ACCT 1140001225624921
REQUESTOR U648880
22393541  09/24/2019 Research 22394966

Summons and Subpoenas Department
S4001-01F
Phoenix AZ 85038

# Wells Fargo Business Choice Checking

Account number:  1225624921   ■   December 1, 2017 - December 31, 2017   ■   Page 1 of 5



INDVLS
24311 SYLVAN GLEN RD
CALABASAS CA 91302-2362

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted
**1-800-CALL-WELLS**  (1-800-225-5935)

*TTY: 1-800-877-4833*
*En español: 1-877-337-7454*

*Online:* wellsfargo.com/biz

*Write:*  Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR  97228-6995

## Your Business and Wells Fargo

Cash flow is a key indicator of the financial health of your business. Find tips and strategies for effective cash flow management at wellsfargoworks.com.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s)  Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ✓ |
| Online Statements | ✓ |
| Business Bill Pay | ✓ |
| Business Spending Report | ✓ |
| Overdraft Protection | ✓ |

## Activity summary

| | |
|---|---|
| Beginning balance on 12/1 | $21,618.62 |
| Deposits/Credits | 88,976.81 |
| Withdrawals/Debits | - 103,797.32 |
| **Ending balance on 12/31** | **$6,798.11** |
| | |
| Average ledger balance this period | $15,817.72 |

Account number:  **1225624921**

**INDVLS**

*California account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 121042882

For Wire Transfers use
Routing Number (RTN): 121000248

**Overdraft Protection**

Your account is linked to the following for Overdraft Protection:
■   Savings - 000006268381107

Account number:  **1225624921**   ▪   December 1, 2017 - December 31, 2017   ▪   Page 2 of 5



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|------|-------------|-------------------|---------------------|---------------------|
| 12/1 | | Online Transfer From Campbell Z Everyday Checking xxxxxx1495 Ref #Ib03Zpv9Ts on 12/01/17 | 270.00 | | |
| 12/1 | | Purchase authorized on 11/29 Starbucks Store 05 Calabasas CA S587333823690145 Card 3561 | | 18.40 | |
| 12/1 | | Recurring Payment authorized on 11/30 Experian *Credi 866-6171694 CA S467334350767720 Card 3561 | | 24.99 | |
| 12/1 | | Purchase authorized on 12/01 Urbanelegance23 Los Angeles CA S307335114875518 Card 3561 | | 2,180.00 | |
| 12/1 | | Transfer to Sou Joanna on 12/01 Ref #Rp03Zpvdb4 | | 600.00 | 19,065.23 |
| 12/4 | | Purchase authorized on 11/30 76 - Calabasas Uni Calabasas CA S587334863955248 Card 3561 | | 42.98 | |
| 12/4 | | Purchase authorized on 12/01 Tst* Sunlife Organ Calabasas CA S307335026678644 Card 3561 | | 23.85 | |
| 12/4 | | Purchase authorized on 12/03 76 - Calabasas Uni Calabasas CA S587337741104731 Card 3561 | | 39.99 | |
| 12/4 | | Transfer to Campbell Eric on 12/04 Ref #Rp03Zyxlt You See ME NOW. | | 1,648.00 | |
| 12/4 | | T-Mobile Fdc Paymen 171203 3758643 Aja Ducros | | 28.75 | |
| 12/4 | 1025 | Check | | 9,000.00 | 8,283.66 |
| 12/5 | | Purchase authorized on 12/05 Urbanelegance23 Los Angeles CA S387339057975637 Card 3561 | | 2,725.00 | |
| 12/5 | | Purchase authorized on 12/04 McDonald's F17114 Woodland Hill CA S387339250915428 Card 3561 | | 12.23 | |
| 12/5 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib0422Dn66 on 12/05/17 | | 1,000.00 | 4,546.43 |
| 12/6 | | Purchase authorized on 12/05 Lyft *Ride Mon 8 8552800278 CA S467338602179551 Card 3561 | | 24.06 | |
| 12/6 | | Purchase authorized on 12/05 AT&T*Bill Payment 800-288-2020 TX S467339587510532 Card 3561 | | 1,095.40 | |
| 12/6 | | Transfer to Ducros Aja on 12/06 Ref #Rp0426Sv99 | | 400.00 | 3,026.97 |
| 12/7 | | Transfer to Sou Joanna on 12/07 Ref #Rp0429Mdkg | | 1,500.00 | 1,526.97 |
| 12/8 | | T-Mobile Fdc Paymen 171207 9656637 Indvls Inc | | 268.16 | |
| 12/8 | | State Farm Ro 27 Sfpp 23 S 1262912923 Ze'Shawn Campbell | | 855.62 | |
| 12/8 | | Overdraft Protection From 6268381107 | 6.02 | | 409.21 |
| 12/11 | | Purchase authorized on 12/08 Urbanelegance23 Los Angeles CA S467342794122306 Card 3561 | | 1,090.00 | |
| 12/11 | | T-Mobile Fdc Paymen 171208 3726236 Aja Ducros | | 107.00 | -787.79 |
| 12/12 | | Cash Deposited Fees Assessed IN Error | 30.00 | | |
| 12/12 | | Edeposit IN Branch/Store 12/12/17 09:50:49 Am 23325 Mulholland Dr Woodland Hills CA 3561 | 15,000.00 | | |
| 12/12 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib042Pqnvm on 12/12/17 | | 3,500.00 | |
| 12/12 | 1073 | Check | | 2,258.00 | |
| 12/12 | † | Merchant Issued Payment Card - Palms Casino Echeck 171211 Pu#: 000017117 950110 4321 W Flamingo Rd Las Vegas NV | | 100.00 | 8,384.21 |
| 12/13 | | Purchase authorized on 12/12 Best Buy #116 Canoga Park CA P000000093924849 7 Card 3561 | | 2,868.85 | |
| 12/13 | | Purchase authorized on 12/13 Cycle Gear #129 Culver City CA P00467347747893295 Card 3561 | | 901.92 | 4,613.44 |
| 12/14 | | Recurring Payment authorized on 12/13 Netflix.Com Netflix.Com CA S387347855683362 Card 3561 | | 13.99 | 4,599.45 |
| 12/15 | | Purchase authorized on 12/14 Beverly Center #48 Los Angeles CA S387348017837587 Card 3561 | | 1.00 | |
| 12/15 | | Purchase authorized on 12/14 Lawdepot.Com 877-5 Edmonton Can S587348349941980 Card 3561 | | 33.00 | |
| 12/15 | | Transfer to Gamble Brunel on 12/15 Ref #Rp0434Zgyh | | 2,500.00 | 2,065.45 |
| 12/18 | | Purchase authorized on 12/16 Starbucks Store 18 Woodland Hill CA S387350067201484 Card 3561 | | 8.05 | |
| 12/18 | | Transfer to Jackson Marques on 12/16 Ref #Pp04379J4Y xxxxxx9367 | | 1,500.00 | |

Account number: **1225624921** ▪ December 1, 2017 - December 31, 2017 ▪ Page 3 of 5



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 12/18 | | American Express ACH Pmt 171218 W8358 Wells Fargo Campbell | | 6,701.93 | |
| 12/18 | | Coinbase.Com/Btc 8003435845 SD1300 N1Fdvlcpc4D4 Zeshawn S Campbell | | 500.00 | |
| 12/18 | | Coinbase.Com/Btc 8003435845 SD1300 McHvnycgc4D4 Zeshawn S Campbell | | 1,500.00 | -8,144.53 |
| 12/19 | | ATM Cash Deposit on 12/18 717 Olympic Blvd. Los Angeles CA 0007281 ATM ID 0305E Card 3561 | 3,000.00 | | |
| 12/19 | | ATM Cash Deposit on 12/18 717 Olympic Blvd. Los Angeles CA 0007282 ATM ID 0305E Card 3561 | 2,900.00 | | |
| 12/19 | | ATM Cash Deposit on 12/18 717 Olympic Blvd. Los Angeles CA 0007283 ATM ID 0305E Card 3561 | 2,600.00 | | |
| 12/19 | | ATM Cash Deposit on 12/18 717 Olympic Blvd. Los Angeles CA 0007284 ATM ID 0305E Card 3561 | 1,000.00 | | |
| 12/19 | | Purchase authorized on 12/18 Dtv*DIRECTV Servic 800-347-3288 CA S387351839986462 Card 3561 | | 638.69 | |
| 12/19 | | Purchase authorized on 12/18 Kaiser Direct Pay 800-464-4000 CA S387351840175790 Card 3561 | | 531.00 | 185.78 |
| 12/22 | | Card Provisional Credit 21219174941 | 2,718.79 | | |
| 12/22 | | Edeposit IN Branch/Store 12/22/17 03:03:33 Pm 23325 Mulholland Dr Woodland Hills CA 4921 | 61,452.00 | | 64,356.57 |
| 12/26 | | Transfer to Quezada Jessica on 12/23 Ref #Rp043Scfh7 Coffee | | 25.00 | |
| 12/26 | | Withdrawal Made In A Branch/Store | | 25,000.00 | |
| 12/26 | | Transfer to Jackson Marquise on 12/23 Ref #Rp043Tnzwd | | 200.00 | |
| 12/26 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib043Ywjsp on 12/26/17 | | 1,500.00 | |
| 12/26 | | Bmwfinancial Svs Retry Pymt 171217 xxxxx4816 Miriam Gelfa4002721514 | | 2,028.36 | 35,603.21 |
| 12/27 | | Online Transfer to Campbell Z Everyday Checking xxxxxx1495 Ref #Ib0443F8Nk on 12/27/17 | | 1,000.00 | |
| 12/27 | | Withdrawal Made In A Branch/Store | | 20,000.00 | 14,603.21 |
| 12/28 | | Las Virgenes Wat Utility 171227 5988890 Zeshawn *Campbell | | 754.10 | 13,849.11 |
| 12/29 | | Withdrawal Made In A Branch/Store | | 7,000.00 | |
| 12/29 | | Cash Deposited Fee | | 51.00 | 6,798.11 |
| **Ending balance on 12/31** | | | | | 6,798.11 |
| **Totals** | | | **$88,976.81** | **$103,797.32** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

† *Merchant-Issued Payment Card: This transaction is related to a purchase(s) made using a merchant-issued payment card. The date the merchant submitted the transaction to Wells Fargo may not be the date the transaction was conducted.*

## Summary of checks written *(checks listed are also displayed in the preceding Transaction history)*

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 1025 | 12/4 | 9,000.00 | 1073 * | 12/12 | 2,258.00 |

\* *Gap in check sequence.*

## Items returned unpaid

| Date | Description | | Amount |
|---|---|---|---|
| 12/12 | Check Reference # 00010003000587901661 | | 51,339.00 |
| 12/13 | Check Reference # 00007464008214804862 | | 7,000.00 |
| 12/20 | Bmwfinancial Svs Bmwfs Pymt 171217 xxxxx4816 Miriam Gelfa4002721514   Reference # | 021000022382679 | 2,028.36 |
| 12/22 | Check Reference # 00017121008558335357 | | 8,000.00 |

# EXHIBIT 8

# BMW Financial Services



5550 Britton Parkway
Hilliard OH 43026-7456

May 9, 2017

5000757-3641-1  1  2  3641  1 MB 0.423  15



DAMON WIE...

Reference **4002484413 / 2016 BMW M5 Sedan**
Subject **Auction Sale Breakdown**

Dear Damon Wiegert,

This letter is to notify you of the final balance due on your BMW Financial Services account. The vehicle has been sold at a commercial auction and the following is a detailed description of your deficiency balance.

| | |
|---|---|
| Balance as of Recovery Date: | $127,432.18 |

Expenses and Charges:

| | |
|---|---|
| Reconditioning Fee(s) | $75.00 |
| Auction Fee(s) | $125.00 |
| Transportation Charge(s) | $85.60 |
| Promotional Fee(s) | $97.57 |
| DMV Fee(s) | $10.00 |
| Miscellaneous Fee(s) | $24.00 |

| | |
|---|---|
| Contractual Balance: | $127,849.35 |

Credits:

| | |
|---|---|
| Realized Value from Sale | $75,000.00 |
| Miscellaneous Credit | $0.00 |
| Total Credits | $(75,000.00) |

| | |
|---|---|
| **Deficiency Balance Due:** | **$52,849.35** |

As stated in your financing agreement with us, you are liable for the payment of the Deficiency Balance Due in the amount of $52,849.35. Payment is due within 20 days from the date of this letter. Please mail your check or money order (include your 10 digit account number in the memo section of the check) to:

BMW Financial Services
P.O. Box 78103
Phoenix, AZ 85062-8103

**Company**
BMW Financial Services
NA, LLC

BMW Group Company

**Mailing Address**
PO Box 3608
Dublin OH 43016-0306

**Office Address**
5550 Britton Parkway
Hilliard OH 43026-7456

**Telephone**
(800) 398-3939

**Fax**
(888) 235-2557

**Internet**
www.bmwusa.com

██████████████████████

- 1 of 5 -

FD-302 (Rev. 5-8-10) ████████████

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry ___10/03/2019___

D█████ WI████T(WI██████), date of birth (DOB) ██████████████, social
security number ██████████ and mailing address of ████████████,
█████, was interviewed telephonically ████████████████. After
being advised of the identity of the interviewing agent and the nature of
the interview, WI██████ provided the following information:

W██████ first met ZESHAWN CAMPBELL(CAMPBELL) while working at a computer
company called Axiom located in Irvine. W██████ worked for the company in
the sales department for about eight months prior to meeting CAMPBELL. The
company hired CAMPBELL in May of 2016 to work in the warehouse.

CAMPBELL showed romantic interest in W██████ in June or July of 2016.
W██████ initially rebuffed him saying she did not want to date someone at
her job. CAMPBELL told her he was well off and only took the job to get out
of the house. He had other businesses including a transportation company
called Arion Transportation that worked with the military and he also said
he owned some McDonald's franchises. The McDonald's franchises were tied up
in probate.

CAMPBELL lived in a penthouse apartment in a complex called Astoria in
Irvine when W██████ and CAMPBELL first met. He also drove a BMW 7 series.

CAMPBELL eventually quit Axiom in mid July 2016 so W██████ and CAMPBELL
could date. They began dating in mid to late July 2016.

In August of 2016 CAMPBELL revealed to W██████ and WIEGERT's family
members that CAMPBELL had been diagnosed with stage four cancer and had only
been given four months to live. CAMPBELL showed W██████ and her family
members financial documents that showed CAMPBELL had significant assets. He
showed W██████ a bank statement from Bank of America in CAMPBELL's name with
a balance of $9,000,000. He also showed her a tax document which reflected
$17,000,000 in revenue for his transportation business. CAMPBELL explained

Investigation on ___10/01/2019___ at ___Los Angeles, California, United States (In Person)___

File # ████████████                                    Date drafted ___10/02/2019___

by HEATON RYAN

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FD-302a (Rev. 5-8-10)

Continuation of FD-302 of  (U) L███ ██ W█ . ██ 10-1-2019                    , On  10/01/2019 , Page  2 of 5

he wanted to leave these assets to WI████ and her family. CAMPBELL showed
some text messages between himself and other family members to illustrate
the strife in his own family. He felt WI████ and her family would manage
the assets better and do the right thing.

WI████ explained that some of her family members were included in this
discussion because they also worked at Axiom when CAMPBELL worked there. The
company was not very big so he met WIEGERT's relatives. W████T had also
previously introduced CAMPBELL to her mother.

WI████ initially was skeptical about CAMPBELL's decision to leave his
assets to WI████'s family. It seemed like a lot of money to her and she
also knew that CAMPBELL had two daughters.

Sometime after the discussion about CAMPBELL's illness CAMPBELL asked for
a copy WI████RT's driver's license (DL) and her social security number (SSN).
CAMPBELL explained to her that he needed it to give to his lawyer to merge
his accounts with W█████'s. He also needed it so the lawyer could prepare a
trust related to his will. W█████ gave him a copy of her DL and SSN.

CAMPBELL then explained to WI████ that they needed to establish credit
for her. He told WI████ she would become an authorized user on credit cards
in the name of CAMPBELL to establish her credit. WI████ initially believed
she was added to a Best Buy credit card and a Chase credit card in the name
of CAMPBELL. She later discovered the credit cards were actually in her
name.

CAMPBELL then asked WI████ to go with him to a BMW car dealership in
Irvine. CAMPBELL wanted to get WI████ a company car. WI████T asked the BMW
sales people if the car was in her name. The sales people confirmed the car
was not in her name. She signed some documents at the dealership and they
received the car. WI████ eventually discovered the car was purchased in her
name.

In January of 2017 WI████ received an email from a person she believed
to be CAMPBELL's wife. In the email the wife made mention of WI████T's
financial ties to CAMPBELL and that CAMPBELL was likely to screw
WI████ over like he had done to many women before.

The email from CAMPBELL's wife made WI████ suspicious. She decided to

FD-302a (Rev. 5-8-10)

Continuation of FD-302 of (U) D███ ██ W██ ███ 10-1-2019 ██████ , On 10/01/2019 , Page 3 of 5

look into CAMPBELL's cancer claim. She learned from the hospital that CAMPBELL said he went to for cancer treatments that CAMPBELL had never been a patient there. She then investigated her credit. She used a website called Credit Karma to review her credit report and discovered seven credit cards in her name, some she had no knowledge of. Two of the credit cards she knew about, the Best Buy card and the Chase credit card previously mentioned, but she thought they were in CAMPBELL's name. Visiting Credit Karma was the first time she discovered those two credit cards were actually in her name. The other credit cards, including ones at Capital One, Bank of America and Discover she had no prior knowledge of. She also discovered an AT&T phone account and DirecTV account were opened in her name without her knowledge. WI████ eventually learned that the BMW she thought was a company car was in her name. WI████ never made any payments on the BMW. The car was purchased from Irvine BMW.

W████ contacted the credit card companies and was able to get the credit cards removed from her credit report. WI████ estimated the total outstanding balance on the credit cards was around $48,000. She was unable to get the car removed from her credit. BMW relied on the documents she signed to claim she was responsible for the car.

W████ provided information about various businesses CAMPBELL said he had while they dated. CAMPBELL said he owned some McDonald's franchises. He inherited them from a foster parent. He said he grew up in foster care. The franchises were tied up in probate because himself and a foster brother had a dispute over the franchises. They did not get along.

CAMPBELL also told W████ he had a military transportation company, Arion Transportation. CAMPBELL said he had previously been in the Navy. A sergeant promoted him which gave him access to military contracts. CAMPBELL and his wife's brother started the transportation company, they transported military equipment.

When CAMPBELL and W████ were together CAMPBELL appeared to take phone calls about his businesses. He occasionally mentioned he was short on money for one reason or another. As an example, CAMPBELL said some money from his transportation company had been stolen. He looked for help from WI████. He needed $3,000. Another time he said he did not have his medical ID card with him and needed $2,500 for some cancer medication. WI████ never gave him any

FD-302a (Rev. 5-8-10)



Continuation of FD-302 of ___(U) D█████ W███ ██: 10-1-2019___ ,On __10/01/2019__ ,Page __4 of 5__

money, because she did not have any money to give.

W█████ recalled CAMPBELL mentioned Texas Family Fitness at some point. He described it as a job experience. He said he was being mentored by a person named JAMES from the gym franchise.

At some point while they were dating CAMPBELL identified Hoag Hospital as the place treating him for his cancer. He told W█████ he had been diagnosed two years prior to W█████ and CAMPBELL meeting. Around the time W█████ received the email from CAMPBELL's wife W█████ went to Hoag Hospital and spoke to a receptionist. CAMPBELL had previously told W█████ he had a chemotherapy appointment at Hoag Hospital on that day. W█████ told the receptionist she needed to confirm her husband's chemotherapy appointment, and provided CAMPBELL's name. The receptionist said it did not appear CAMPBELL had ever been a patient of Hoag Hospital.

After learning about the credit cards in her name and that it did not appear CAMPBELL had cancer she became scared. She did not confront CAMPBELL with what she discovered. W█████ told CAMPBELL not to contact her and then she contacted the police.

W█████ provided more detail about how she received an email from CAMPBELL's wife. While W█████ and CAMPBELL dated W█████ allowed CAMPBELL to take W█████'s computer and use it. W█████ suspected that CAMPBELL must have had W█████'s computer around his wife. CAMPBELL's wife then accessed the computer and sent the email using W█████'s own email address to W█████. In addition to pointing out the financial ties between W█████ and CAMPBELL the email also said that CAMPBELL still wanted to be with his wife. W█████ received the email in January of 2017. She went to the hospital and found out about the credit cards around this time.

W█████ believed she sent CAMPBELL one email around the time she discovered the credit cards, but he never responded.

W█████ did not know if CAMPBELL dated anyone else while she dated him.

CAMPBELL ended up being the person who drove the BMW in W█████'s name. W█████ thought CAMPBELL gave the other BMW he had been driving to his sister.

FD-302a (Rev. 5-8-10)

████████████████████

████████████

Continuation of FD-302 of __(U)  D███ █ W.████ █ 10-1-2019_____ , On __10/01/2019__ , Page __5 of 5__


W█████ █aid when she first started to get to know CAMPBELL he told her he had **been** in a motorcycle accident on July 18, 2016. W█████ some time later googled CAMPBELL and discovered he was arrested on that day. W█████ did not know what CAMPBELL was arrested for.

At least one of the credit cards in W█████'s name had an address not associated with her.

CAMPBELL never got another job after he quit working at Axiom. He applied for other jobs, but never took another job while W█████ and CAMPBELL dated.

USAO_00000107

# BMW Financial Services



March 21, 2019

Ms. Mi▇▇n A Gelfand
3▇▇▇ ▇▇▇▇▇▇ Rd
▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇621

Reference  4002721514 / 2017 BMW 750i Sedan / WBA7F0C37HGM22284
Subject    Insurance Settlement Invoice

Dear Ms. Mi▇▇ A Gelf▇▇:

A total loss payoff of was $68,107.00 received from USAA as settlement on your recent claim. The Total Loss Protection section of your lease agreement provides total loss protection in the event of a shortage between your account payoff and the total loss payoff from insurance proceeds. This protection is provided only if you have maintained the Vehicle Insurance as outlined in the Insurance, Maintenance & Operation section of your lease agreement. The shortage between your account payoff and the total loss payoff from the insurance proceeds is outlined below:

| | |
|---|---:|
| Account Payoff: | $110,447.89 |
| Less total loss payoff from insurance: | $68,107.00 |
| Shortage Amount: | $42,340.89 |

The Insurance Early Termination section of your lease agreement reads as follows: "If the Vehicle has been stolen or destroyed, and if you have maintained the Vehicle Insurance required by this Lease, you will have to pay the Total Loss Payoff which is: (a) the proceeds of the Vehicle Insurance; (b) the deductible under the Vehicle Insurance policy; (c) unpaid Monthly Payments due; and (d) official fees or taxes assessed or billed in connection with this Lease, and any other charges to satisfy your obligations under this Lease." As a result, you are contractually responsible for the following:

### Items not covered by Total Loss Protection

| | |
|---|---:|
| Unpaid monthly payments: | $16226.24 |
| Unpaid late charges: | $1129.44 |
| Deductible: | $0.00 |
| Total amount not covered by total loss protection: | $ 17,355.68 |
| | |
| Less security deposit: | ($0.00) |
| Total Amount Due: | $17,355.68 |

**Company**
BMW Financial
Services NA, LLC

BMW Group Company

**Mailing Address**
PO Box 3608
Dublin OH 43016-0306

**Office Address**
5550 Britton Parkway
Hilliard OH 43026

**Telephone**
(800) 653-4269

**Fax**
(888) 910-6245

**Internet**
bmwusa.com

# BMW Financial Services

Subject  Insurance Settlement Invoice - 4002721514
Date  March 21, 2019
Page  2 of 2

Payment of $17,355.68 is required within 30 days of the receipt of this letter to close your account with BMW Financial Services. Please include your account number as reference and address your payment to:

BMW Financial Services
5550 Britton Parkway
Hilliard, Ohio 43026-7456

We are committed to providing you with the highest level of service. If you have any questions, please contact an Insurance Specialist at (800) 653-4269, Monday through Friday, from 9:00 a.m. to 6:00 p.m. ET, or by mail at either address listed on this letter.

Best regards,

Amanda Turner
Insurance Team Leader
BMW Financial Services
**as servicer for Financial Services Vehicle Trust**

# EXHIBIT 9

Hoag Hospital Irvine

| **ED H&P: Headache** | Date of Service: 07/05/2015 01:02 |
|---|---|
| Authored : 07/05/2015 01:02 | Last Modified : 07/08/2015 05:24 |

**ARRIVAL:**
**Treatment prior to Arrival:**
- Mode of arrival: Private Auto.

**Information Source:**
- History provided by patient.

**CHIEF COMPLAINT/HPI:**
- headache.

**HISTORY OF PRESENT ILLNESS:**
- **HPI:** 28 year old male presents with constant frontal headache x 1 week. Patient states he has experienced similar headaches in the past, however has not experienced one "for a long time". Denies recent increase in stress level. Denies nausea or vomiting. Positive sick contact- wife has "itchy throat".

  Patient reports he has history of tumors, one found on scalp and one on back about 2 years ago in Texas. Tumors were removed, biopsy revealed possible early Hodgkin's lymphoma. Patient states he had similar headache at that time.  Patient declined treatment because his spouse had just had a baby.

- **Onset:** 1 week
- **Timing:** gradual
- **Duration:** constant
- **Context:** not related to any particular activity
- **Quality:** similar to previous headaches; tightness
- **Location:** frontal
- **Radiation:** none
- **Severity (Current):** mild
- **Severity (Max):** moderate

- **Associated Symptoms/Review of Systems:** NEGATIVE FOR: fever, vision problems, sensitivity to light, preceding symptoms, nausea, vomiting, neck pain, neck stiffness, speech problems, focal weakness

- **Modifying Factors: WORSENED BY: nothing**; RELIEVED BY: nothing

- **Other: POSITIVE FOR: similar symptoms previously**; NEGATIVE FOR: recent trauma

**REVIEW OF SYSTEMS:**
**.:** See History of Present Illness.. Except as noted positive, all systems reviewed and found negative
**Constitutional: POSITIVE FOR: recent illness**; NEGATIVE FOR: fever

**Eyes:** NEGATIVE FOR: vision change, photophobia, discharge, redness

**HENT: POSITIVE FOR: sore throat**; NEGATIVE FOR: head trauma, nasal congestion

| **CHART COPY - CONFIDENTIAL** | | |
|---|---|---|
| ED H&P: Headache | Admit Date: 07/05/2015 | **MRN: 226-52-18   VisitID: 193-54954** |
| Page 1 of 5 | Printed: 04/18/2016 08:32 | IH ED Main |
| | DOB: 03/31/1987    Age: 29y    Gender: M | **CAMPBELL, ZESHAWN STANLEY** |

CMAXX: 2265218~19354954~1345~201507050459

# EXHIBIT 10

*LAST WILL AND TESTAMENT*
*OF*
*ZE'SHAWN CAMPBELL*

I, Ze'Shawn Campbell, of Los Angeles, California, revoke my former Wills and Codicils and declare this to be my Last Will and Testament.

### ARTICLE I
### IDENTIFICATION OF FAMILY

The names of my children are Makayla Campbell and Kaliana Campbell. All references in this Will to "my children" are references to the above-named children and any children born to me or adopted by me after the signing of this Will.

### ARTICLE II
### PAYMENT OF DEBTS AND EXPENSES

I direct that my just debts, funeral expenses and expenses of last illness be first paid from my estate.

### ARTICLE III
### DISPOSITION OF PROPERTY

A. <u>Specific Bequests.</u> I direct that the following specific bequests be made from my estate.

$1,000,000.00 shall be distributed to Kazuo Lou-Horsley. If this beneficiary does not survive me, this bequest shall be distributed to Michelle Horsley. If this beneficiary does not survive me, this bequest shall be distributed with my residuary estate.

1,500,000.00 shall be distributed to Michelle Horsley. If this beneficiary does not survive me, this bequest shall be distributed with my residuary estate.

B. <u>Residuary Estate.</u> I direct that my residuary estate be distributed to

15% - my spouse, Joanna Sou. If my spouse does not survive me, this share shall be distributed proportionately to the other distributee(s) listed under this provision.

if the child has already attained the age specified in paragraph (b) at my death, the child shall have the right to withdraw a total of two-thirds in value of the remaining assets then being held in that child's trust share. However, in the event that the child does not make a request for a distribution within six months after attaining eligibility to do so, the amount of such distribution shall not be distributed by the Trustee except as either (i) a part of the next succeeding distribution, or (ii) as provided in paragraph (e).

e. Prior to final distribution to each child, as provided in this section, the Trustee shall pay to each child such sums from the income or principal of that child's share as the Trustee deems advisable for such child's health, education, support, and maintenance. Any income not distributed shall be added to principal.

f. If a child of mine dies before receiving full distribution of such child's share, the remainder of such child's share shall be distributed by right of representation to such child's descendants, if any, or if none, by right of representation to my descendants. Each portion distributable to a descendant of mine for whom a share of this Trust is being held shall be distributed to the Trustee of that share and become a part of that share.

2. With respect to each share provided for the then living descendants, collectively, of a deceased child of mine, the trustee shall distribute that share by right of representation to the descendants of the deceased child.

3. If no child of mine survives to age 18 years, and if none of my children have surviving descendants, the Trustee shall distribute the remaining Trust assets in the manner set forth in the paragraph "No Surviving Descendants."

4. Upon the death of a trust beneficiary under the circumstances contemplated by this section ("Use and Distribution"), the Trustee, in the Trustee's discretion, may pay the expenses of last illness, funeral, and related expenses of such deceased beneficiary from Trust assets.

5. Whenever income or principal is to be used for the benefit of a person under the age of eighteen (18) years or a person who in the judgment of the Trustee is incapable of managing such person's own affairs, the Trustee may make payment of such property in any or all of the following ways:

a. By paying such property to the parent, guardian, conservator, or other person having the care and control of such person for such person's benefit or to any authorized person as custodian for such person under the Uniform Transfers to Minors Act or equivalent legislation.

b. By paying such property to the guardian, conservator, or other person having the care and control of any incapacitated person.

c. By paying directly to any such beneficiary such sums as the Trustee may deem advisable as an allowance.

    d. By expending such property in such other manner as the Trustee in its discretion believes will benefit any such beneficiary.

C. <u>No Surviving Descendants.</u> If at any time before final distribution of any trust created under this Will, there is not in existence anyone who is, or might become, entitled to receive benefits under the foregoing provisions of this Will, then any portion of my trust or estate then remaining shall be paid over and distributed outright to my heirs-at-law, their identities and respective shares to be determined under the laws of the State of California, then in effect, relating to the succession of separate property that is not attributable to a predeceased spouse, as if I had died intestate at the time fixed for distribution under this provision.

D. <u>Protection of Beneficiaries.</u> The interest of any beneficiary under this Trust shall not be subject to assignment, anticipation, claims of creditors, or seizure by legal process. If the Trustee believes that the interest of any beneficiary is threatened to be diverted in any manner from the purposes of this Trust, the Trustee shall withhold the income and principal from distribution, and shall apply payment in the Trustee's discretion in such manner as the Trustee believes shall contribute to the health, support, maintenance, and education of the beneficiaries. When the Trustee is satisfied that such diversion is no longer effective or threatened, the Trustee may resume the distributions of income and principal previously authorized. If a separate Trust share had been designated for such beneficiary prior to such withholding by the Trustee, any undistributed income from such share shall be added to the principal of that beneficiary's share.

E. <u>Nomination of Trustee.</u> I nominate Joanna Sou, of irvine, California, as the Trustee, without bond. If such person or entity does not serve for any reason, I nominate Marques Jackson, of Los Angeles, California, to be the Trustee, without bond.

F. <u>Additional Trustee Provisions.</u> These additional provisions shall apply regarding the Trustee.

    1. *Resignation, Incapacity, or Death of the Trustee.* Upon the resignation, incapacity, or death of the Trustee, Eric Campbell, of Long beach, California, is designated as the successor Trustee without bond. Such designee shall become the successor Trustee upon acceptance of the terms and conditions of this Agreement. For the purposes of this Trust, "incapacity" means a legal disability or the inability to provide prompt and intelligent consideration to financial matters by reason of illness or mental or physical disability.

    2. *Resignation of Trustee.* The Trustee, or any successor, may resign at any time by giving 60 days' written notice to all adult beneficiaries, and to a parent or guardian, if any, of each minor beneficiary of the Trust.

    3. *Successor Trustee.* If the Trustee resigns or ceases to serve for any reason, and if the successor Trustee designated in this document, if any, fails or ceases to serve as Trustee, then the beneficiaries to whom such notice of resignation is given shall designate a successor Trustee by written notice to the resigning Trustee within 45 days after receipt of the notice of resignation. If a successor Trustee is not so designated, the resigning Trustee shall have the

right to secure the appointment of a successor Trustee by a court of competent jurisdiction, at the expense of the trust. If a successor Trustee is appointed, such Trustee shall be bound by, and subject to, the provisions of this Trust.

4. *Accounting*. The Trustee shall provide an accounting to the Beneficiary (or Beneficiaries) on at least a(n) annual basis. If a beneficiary has a "disability", the Trustee shall provide the accounting to a guardian or conservator of the beneficiary, if any.

5. *Bond*. Successor Trustees, other than those nominated in this Will, shall serve without bond.

## ARTICLE V
## NOMINATION OF INDEPENDENT EXECUTOR

I nominate Joanna Sou, of Irvine, California, as my Independent Executor, to serve without bond, surety, or other security. If such person or entity does not serve for any reason, I nominate Marques Jackson, of Los ANGELES, California, to serve as my Independent Executor, to serve without bond, surety, or other security.

## ARTICLE VI
## EXECUTOR AND TRUSTEE POWERS

A. Power to Administer Estate. My Executor, with respect to my estate, and my Trustee with respect to my trust, in addition to other powers and authority granted by law or necessary or appropriate for proper administration, shall have the following rights, powers, and authority without order of court and without notice to anyone: to identify, gather, value, secure, manage and distribute assets, to maintain records, to settle and wind up business affairs, to pay just debts, to file necessary tax returns, to redirect mail, to cancel services, to establish trusts, and to carry out my wishes as set forth in this Will.

1. *Receive Assets*. To receive, hold, maintain, administer, collect, invest and re-invest the estate and trust assets, and collect and apply the income, profits, and principal of the estate and trust in accordance with the terms of this instrument.

2. *Receive Additional Assets*. To receive additional assets from other sources, including assets received under the Wills of other persons.

3. *Standard of Care*. To acquire, invest, reinvest, exchange, retain, sell, and manage estate and trust assets, exercising the judgment and care, under the circumstances then prevailing, that persons of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. Within the limitations of that standard, the Executor and Trustee are authorized to acquire and retain

every kind of property, real, personal or mixed, and every kind of investment, specifically including, but not by way of limitation, bonds, debentures and other corporate obligations, and stocks, preferred or common, that persons of prudence, discretion and intelligence acquire or retain for their own account, even though not otherwise a legal investment for trust funds under the laws and statutes of the United States or the state under which this instrument is administered.

4. *Retain Assets.* To retain any asset, including uninvested cash or original investments, regardless of whether it is of the kind authorized by this instrument for investment and whether it leaves a disproportionately large part of the estate or trust invested in one type of property, for as long as the Executor or Trustee deems advisable.

5. *Dispose of or Encumber Assets.* To sell, option, mortgage, pledge, lease or convey real or personal property, publicly or privately, upon such terms and conditions as may appear to be proper, and to execute all instruments necessary to effect such authority.

6. *Settle Claims.* To compromise, settle, or abandon claims in favor of or against the estate or trust.

7. *Manage Property.* To manage real estate and personal property, borrow money, exercise options, buy insurance, and register securities as may appear to be proper.

8. *Allocate Between Principal and Income.* To make allocations of charges and credits as between principal and income as in the sole discretion of the Executor or Trustee may appear to be proper.

9. *Employ Professional Assistance.* To employ and compensate counsel and other persons deemed necessary for proper administration and to delegate authority when such delegation is advantageous to the estate or trust.

10. *Distribute Property.* To make division or distribution in money or kind, or partly in either including disproportionate in-kind distributions, at values to be determined by the Executor or Trustee, and the judgment of either in such respect shall be binding upon all interested parties.

11. *Enter Contracts.* To bind the estate or trust by contracts or agreements without assuming individual liability for such contracts.

12. *Exercise Stock Ownership Rights.* To vote, execute proxies to vote, join in or oppose any plans for reorganization, and exercise any other rights incident to the ownership of any stocks, bonds or other properties of the estate or trust.

13. *Duration of Powers.* To continue to exercise the powers provided in this Article notwithstanding the termination of the trust until all the assets of the trust have been distributed.

14. *Hold Trust Assets as a Single Fund.* To hold the assets of the trust, shares, or portions of the trust created by this instrument as a single fund for joint investment and management, without the need for physical segregation, dividing the income proportionately among them. Segregation of the various trust shares need only be made on the books of the Trustee for accounting purposes.

15. *Loans to Beneficiaries.* To make loans to any trust beneficiary for the purpose of providing the beneficiary with the funds necessary to take advantage of exceptional business opportunities or to provide for the needs of the beneficiaries and their families.

16. *Methods of Distribution.* To make payments to or for the benefit of any beneficiary (specifically including any beneficiary under any legal disability) in any of the following ways: (a) directly to the beneficiary; (b) directly for the maintenance, welfare and education of the beneficiary; (c) to the legal or natural guardian of the beneficiary; or (d) to anyone who at the time shall have custody and care of the person of the beneficiary. The Executor or Trustee shall not be obliged to see to the application of the funds so paid, but the receipt of the person to whom the funds were paid shall be full acquittance of the Executor or Trustee.

17. *Independent Administration.* My Executor shall have the right to administer my estate using "informal", "unsupervised", or "independent" probate or equivalent legislation designed to operate without unnecessary intervention by the probate court.

## ARTICLE VII
## SPECIAL DIRECTIVES

I hereby state, that in addition to the directives and bequests as set forth in this Will, it is my desire and wish to include the following special directives and last wishes: Cremate me please

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

A. Paragraph Titles and Gender. The titles given to the paragraphs of this Will are inserted for reference purposes only and are not to be considered as forming a part of this Will in interpreting its provisions. All words used in this Will in any gender shall extend to and include all genders, and any singular words shall include the plural expression, and vice versa, specifically including "child" and "children", when the context or facts so require, and any pronouns shall be taken to refer to the person or persons intended regardless of gender or number.

B. One Hundred-Twenty (120) Hour Survival Requirement. For the purposes of determining the appropriate distributions under this Will, no person shall be deemed to have survived me unless such person is also surviving on the one hundred-twentieth (120) hour after the hour of my death.

C. Liability of Fiduciary. No fiduciary who is a natural person shall, in the absence of fraudulent conduct or bad faith, be liable individually to any beneficiary of my estate, and my estate shall

indemnify such natural person from any and all claims or expenses in connection with or arising out of that fiduciary's good faith actions or nonactions of the fiduciary, except for such actions or nonactions which constitute fraudulent conduct or bad faith. No successor trustee shall be obliged to inquire into or be in any way accountable for the previous administration of the trust property.

D. Beneficiary Disputes. If any bequest requires that the bequest be distributed between or among two or more beneficiaries, the specific items of property comprising the respective shares shall be determined by such beneficiaries if they can agree, and if not, by my Independent Executor.

E. No-Contest. If any beneficiary should bring a direct contest to this will without probable cause as defined by the California Probate Code Section 21310 et seq., should file or cause to be filed a pleading challenging the transfer of property on the grounds that the property did not belong to the transferor, or file or cause to be filed a creditors claim or prosecution of and based on it, said beneficiary shall be disqualified and forfeit any inheritance under this will.

IN WITNESS WHEREOF, I have subscribed my name below, this _____ day of _____, _____.

Testator Signature: _____
                    Ze'Shawn Campbell

We, the undersigned, hereby certify that the above instrument, which consists of _____ pages, including the page(s) which contain the witness signatures, was signed in our sight and presence by Ze'Shawn Campbell (the "Testator"), who declared this instrument to be his/her Last Will and Testament and we, at the Testator's request and in the Testator's sight and presence, do hereby subscribe our names as witnesses on the date shown above.

Witness Signature: _____
                   Name: Chonta Hurd
                   Address: _____
                   City: Fontana
                   State: California
                   Phone Number: _____
                   Email: _____

Page 8 of 9

Witness Signature: _____

Name: _____
Address: _____
City: _____
State: _____
Phone Number: _____
Email: _____